# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

NETWORK-1 SECURITY SOLUTIONS, INC., a Delaware corporation,

    Plaintiff,

vs.

CISCO SYSTEMS, INC., a California corporation; CISCO-LINKSYS, L.L.C., a California Limited Liability Company; ADTRAN, INC., a Delaware corporation; ENTERASYS NETWORKS, INC., a Delaware corporation; EXTREME NETWORKS, INC., a Delaware corporation; FOUNDRY NETWORKS, INC., a Delaware corporation; NETGEAR, INC., a Delaware corporation; 3COM CORPORATION, a Delaware corporation,

    Defendants.

Case No. 6:08-cv-030-LED

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................... ii

I.     INTRODUCTION ...............................................................................................................1

II.    STATEMENT OF THE ISSUES TO BE DECIDED..........................................................1

III.   STATEMENT OF UNDISPUTED MATERIAL FACTS ...................................................2

IV.   ARGUMENT ......................................................................................................................4

       A.    Legal Standard For Summary Judgment................................................................4

       B.    Claims 1 And 2 Of The '930 Patent Are Invalid As Indefinite Pursuant To 35 U.S.C. § 112, ¶ 2.......................................................................................................4

            1.    The Structure Corresponding To The "Control Means" Requires An Algorithm As a Matter of Law................................................................4

            2.    Claims 1 and 2 of the '930 patent Are Invalid As Indefinite Because The Specification Does Not Disclose Sufficient Structure For The "Control Means" ...................................................................................7

       C.    Claim 9 Of The '930 Patent Is Invalid As Indefinite Pursuant To 35 U.S.C. §112, ¶ 2.................................................................................................................11

V.    CONCLUSION..................................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

Federal Cases

*Alcatel USA Sourcing, Inc. v. Microsoft Corp.*,
    No. 6:06 CV 499, 2008 WL 3914889 (E.D. Tex. Aug. 21, 2008) .......................................... 6

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
    521 F.3d 1328 (Fed. Cir. 2008) ................................................................................... passim

*Aristocrat Techs., WMS Gaming, Net MoneyIN, Inc. v. Verisign, Inc.*,
    545 F.3d 1359 (Fed. Cir. 2008) .............................................................................................. 6

*Atmel Corp. v. Information Storage Devices, Inc.*,
    198 F.3d 1374 (Fed. Cir. 1999) ........................................................................................ 4, 10

*Blackboard, Inc. v. Desire2Learn Inc.*,
    574 F.3d 1371 (Fed. Cir. 2009) ....................................................................................... 5, 7, 9

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A.*,
    412 F.3d 1291 (Fed. Cir. 2005) .............................................................................................. 4

*Desper Prods., Inc. v. QSound Labs, Inc.*,
    157 F.3d 1325 (Fed. Cir. 1998) .............................................................................................. 4

*Finisar Corp. v. DirecTV Group, Inc.*,
    523 F.3d 1323 (Fed. Cir. 2008) .............................................................................................. 7

*Gobeli Research, Ltd. v. Apple Computer Inc.*,
    384 F. Supp. 2d 1016 (E.D. Tex. 2005) ................................................................................. 9

*Harris Corp. v. Ericsson Inc.*,
    417 F.3d 1241 (Fed. Cir. 2005) .......................................................................................... 5, 6

*IP Innovation, LLC v. Red Hat, Inc.*
    2009 WL 2460982 (E.D. Tex. Aug. 10, 2009) ...................................................................... 6

*Linear Technology Corp. v. Impala Linear Corp.*,
    379 F.3d 1311 (Fed. Cir. 2004) .............................................................................................. 4

*Medical Instrumentation & Diagnostics Corp. v. Elekta AB*,
    344 F.3d 1205 (Fed. Cir. 2003) .............................................................................................. 7

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) .............................................................................................. 5

Federal Statute

35 U.S.C. § 112 ................................................................................................................... passim

Other Authorities

Federal Rules of Civil Procedure Rule 56 ........................................................................................1

U.S. District Court for the Eastern District of Texas Local Rule CV-7 .................................................1

U.S. District Court for the Eastern District of Texas Local Rule CV-56 ..............................................1

## I.     INTRODUCTION

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules CV-7 and CV-56, Defendants move for summary judgment that claims 1, 2, and 9 of U.S. Patent No. 6,218,930 (the "'930 patent") are invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Claim 1 of the '930 patent recites a "control means responsive to said voltage level and adapted to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level." Ex.[1] 1 ('930 patent) col. 4:26-29 (hereinafter, "control means").[2] There is no dispute that (1) the "control means" element is a means-plus-function element, which is subject to the disclosure requirements of 35 U.S.C. § 112, ¶ 6; and (2) the '930 patent identifies a general purpose microprocessor as corresponding structure performing the recited function of the "control means." In these circumstances, Federal Circuit law makes clear that the patent must disclose a sufficient algorithm for the microprocessor to perform the claimed function. Here, however, the '930 patent fails to disclose an adequate algorithm for the microprocessor to perform the recited function of the "control means," and therefore claims 1 and 2 should be adjudged invalid for being indefinite under 35 U.S.C. § 112, ¶ 2.

Claim 9 of the '930 patent recites the step of "continuing to sense voltage level." Ex. 1 ('930 patent) col. 6:2.[3] The '930 patent does not describe the source of the voltage level that is referred to in the "continuing to sense voltage level" element, and therefore claim 9 should be adjudged invalid for being indefinite under 35 U.S.C. § 112, ¶ 2.

## II.     STATEMENT OF THE ISSUES TO BE DECIDED

The first issue to be decided is whether claims 1 and 2 of the '930 patent are invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2 because (1) the "control means" element of independent claim 1 is a means-plus-function element subject to the requirements of 35 U.S.C. § 112, ¶ 6; (2) the specification discloses a general purpose microprocessor as corresponding structure for performing the recited function of the "control means" element; and (3) the '930 specification fails to disclose a

---

[1] "Ex." refers to the exhibits attached to the Declaration of Mark D. Selwyn in Support of Defendants' Motion for Partial Summary Judgment of Invalidity for Indefiniteness.
[2] Claim 2 depends from claim 1.
[3] Claim 9 depends from claim 6.

sufficient algorithm for the microprocessor to perform the recited function of the "control means" element in violation of 35 U.S.C. § 112, ¶ 6.

The second issue to be decided is whether claim 9 of the '930 patent is invalid for indefiniteness under 35 U.S.C. § 112, ¶ 2 because the '930 specification fails to describe the source of the voltage level that is referred to in the "continuing to sense voltage level" element.

## III.   STATEMENT OF UNDISPUTED MATERIAL FACTS

The '930 patent is directed to an "apparatus for remotely powering access equipment over a 10/100 switched Ethernet network" that, among other things, is capable of "controlling power supplied by the secondary power source to the access device in response to a preselected condition of the voltage level." Ex. 1 ('930 patent) cols. 1:51-53 and 2:12-15. Claim 1 of the '930 patent recites:

> 1. Apparatus for remotely powering access equipment in a data network, comprising:
>
> a data node adapted for data switching,
>
> an access device adapted for data transmission,
>
> at least one data signaling pair connected between the data node and the access device and arranged to transmit data therebetween,
>
> a main power source connected to supply power to the data node,
>
> a secondary power source arranged to supply power from the data node via said data signaling pair to the access device,
>
> sensing means for delivering a low level current from said main power source to the access device over said data signaling pair and sensing a resulting voltage level thereon, and
>
> **control means responsive to said voltage level and adapted to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level**.

*Id.* col. 4:10-29 (emphasis added).

The highlighted element of claim 1, referred to herein as the "control means" element, is agreed to be a means-plus-function element subject to the requirements of 35 U.S.C. § 112, ¶ 6. *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 25. Claim 2 is dependent on

independent claim 1 and therefore also includes the "control means" element. Ex. 1 ('930 patent) col. 4:30-36.

The parties agree that the function of the "control means" element is "to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level." *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 25.

The parties agree that the '930 specification discloses a general purpose microprocessor unit 24 as part of the structure corresponding to the "control means" element for performing the recited function. *See id.*; *see also* Ex. 1 ('930 patent), col. 2:59-63 and Fig. 1. The specification describes the microprocessor unit 24 as "operating" a detection circuit. Ex. 1 ('930 patent), col. 2:59-63.

The specification further describes that three voltage states can be determined: "no voltage drop, a fixed level voltage drop or a varying level voltage drop." *Id.* col. 3:2-4. In addition, the specification describes controlling power supplied by a remote power feed to remote equipment based on the voltage state detected: (1) "[i]f no voltage drop is detected…this equipment is identified as unable to support remote power feed," (2) "[i]f a fixed voltage level is detected…this equipment is identified as unable to support remote power feed," and (3) [i]f a varying voltage level is detected...switch S1 is closed which increases the power output to the remote equipment." *Id.* col. 3:4-19.

The '930 patent does not include a flow chart or a code appendix describing the programming or an algorithm for the microprocessor unit 24.

Claim 9 of the '930 patent recites:

> 9. Method according to claim 6, including the step of **continuing to sense voltage level** and to decrease power from the secondary power source if voltage level drops on the data signaling pair, indicating removal of the access device.

Ex. 1 ('930 Patent) col. 6:1-5 (emphasis added). Claim 9 is dependent on independent claim 6.

## IV. ARGUMENT

### A. Legal Standard For Summary Judgment

Summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1378 (Fed. Cir. 1999) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is as appropriate in a patent case as it is in any other case." *Desper Prods., Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (internal quotation marks omitted).

### B. Claims 1 And 2 Of The '930 Patent Are Invalid As Indefinite Pursuant To 35 U.S.C. § 112, ¶ 2

#### 1. The Structure Corresponding To The "Control Means" Requires An Algorithm As a Matter of Law

The analysis of indefiniteness under section § 112, ¶ 2 is a question of law that is "drawn from the court's performance of its duty as the construer of patent claims." *Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (quoting *Atmel Corp.*, 198 F.3d at 1378). The determination of the corresponding structure for a means-plus-function limitation is also a question of law to be decided by the Court. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1318 (Fed. Cir. 2004).

Under 35 U.S.C. § 112, ¶ 6, a means-plus-function limitation "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." For cases involving computer-implemented inventions, "the structure disclosed in the specification [must] be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). This is to avoid purely functional claiming: "[b]ecause general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6." *Id.* (emphasis in original). And, "[i]n a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general

purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). *See also Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005) ("A computer-implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.").

In this case, the parties agree that the "control means" limitation is a means-plus-function limitation, and therefore the '930 patent must disclose corresponding structure for the "control means." *See Blackboard, Inc. v. Desire2Learn Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009). The parties also agree that the specification identifies a microprocessor 24 unit as structure corresponding to the "control means" element. Because the "control means" is implemented as a general purpose microprocessor, as a matter of law an algorithm for the microprocessor is required to be part of the structure. *See Aristocrat Techs.*, 521 F.3d at 1334-35.

In its Claim Construction Brief, plaintiff Network-1 Security Solutions, Inc. ("Network-1") improperly contends that no algorithm should be required for the microprocessor as corresponding structure for the control means limitation because "[a]n algorithm is included only when the structure for a means limitation includes solely a computer or microprocessor." *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 26. Network-1's argument is wrong as a matter of fact and law.

As a factual matter, a microprocessor cannot perform any useful functions without being programmed. Ex. 3 (Declaration of Dr. Robert F. Colwell Regarding Claim Construction of U.S. Patent No. 6,218,930 ("Colwell Decl.")) at ¶¶ 72, 77, 84. This is true whether the microprocessor alone constitutes the structure corresponding to a means-plus-function element, or is only a part of the identified structure. In the present case, even though the A/D converter and the switch 28 are part of the structure corresponding to the "control means,"[4] Network-1 cannot and does not contend that either the A/D converter itself or the switch itself (or the two in combination) can or does

---

[4] The parties agree that the structure of the "control means" element includes at least A/D converter and microprocessor 24, switch 28, and the equivalents thereof. *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 25.

perform the recited function of the "control means" without the microprocessor. Indeed, the very sparse text of the specification confirms they do not: "Switch 28 is actually an internal software controlled switch …." Ex. 1 ('930 patent), col. 2:63-64. Since the microprocessor is a required part of the structure to carry out the recited function of the "control means," and since it cannot operate without programming, its algorithm or programming is a required part of the structure.

As a legal matter, none of the cases plaintiff cites (i.e., *Aristocrat Techs.*, *WMS Gaming*, *Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008), and *IP Innovation, LLC v. Red Hat, Inc.* 2009 WL 2460982 (E.D. Tex. Aug. 10, 2009)) stands for the proposition that an algorithm is required *only* when a general purpose microprocessor is the sole structure identified to carry out the recited function. In these cases, only a general purpose microprocessor or computer was disclosed as the corresponding structure for the means-plus-function element at issue. However, these cases did not hold that an algorithm is required *only* when a microprocessor is the sole structure disclosed.

What these cases decided is that a computer, regardless of whether it stands alone or is combined with other structures, "can be programmed to perform very different tasks in very different ways." *Aristocrat Techs.*, 521 F.3d at 1333. And, reciting a computer without the disclosed algorithm as part of the structure would not limit the scope of the claim to the specific corresponding structure as required by 35 U.S.C. § 112, ¶ 6, regardless of whether only the computer is recited as the corresponding structure, or whether the computer with other associated structure is recited. *Id.* Further, other cases have required an algorithm even when a microprocessor or computer is identified as only *part* of the overall structure for performing the recited function of a means-plus-function element. *See Harris*, 417 F.3d at 1254 (holding that the corresponding structure for a means-plus-function claim included a first processor for performing a first part of an algorithm and a second processor for performing a second part of the algorithm); *Alcatel USA Sourcing, Inc. v. Microsoft Corp.*, No. 6:06 CV 499, 2008 WL 3914889, at *17-18 (E.D. Tex. Aug. 21, 2008) (recognizing that the "corresponding structure for a means-plus-function claim limitation with a computer-implemented function is limited to the algorithm disclosed in the specification," and

holding that the corresponding structure included "message processor 406 using locator module 408 that uses a lookup table stored in mass memory 410").

As a matter of fact and of law, the microprocessor portion of "A/D converter and microprocessor control unit 24" requires an algorithm or programming as part of its structure.

### 2. Claims 1 and 2 of the '930 patent Are Invalid As Indefinite Because The Specification Does Not Disclose Sufficient Structure For The "Control Means"

The Federal Circuit's precedents make it clear that it is not enough to meet the requirements of 35 U.S.C. § 112, ¶¶ 2 and 6 that a person skilled in the art could devise an algorithm to carry out the recited function of the "control means" from what is described in the '930 specification – the specification must actually disclose the algorithm and clearly link it to the function of the "control means."[5] The '930 specification does not do that, and claims 1 and 2 are invalid.

Defendants and Network-1 agree that the corresponding function of the "control means" limitation is "to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level." *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 25. However, the '930 specification only describes the several voltage level conditions (no drop, fixed drop, varying sawtooth) that can be detected and what each identifies about whether a corresponding device is powerable or not. Ex. 1 ('930 patent) col. 2:66-3:19; Ex. 3 (Colwell Decl.) at ¶ 76. In other words, it describes what constitutes a preselected condition, but it does not describe the program steps for the microprocessor to detect the preselected condition or "to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level." Ex. 1 ('930 patent) col. 2:66-3:19; *see also* Ex. 4 (excerpts from the deposition of Boris Katzenberg, taken May 12 and 13, 2009) at 238-47, 249. For example, there is no description of the steps the microprocessor must take to detect the

---

[5] *See Aristocrat Techs.*, 521 F.3d at 1334, 1337 ("the proper inquiry for purposes of section 112 paragraph 6 analysis is to 'look at the *disclosure* of the patent and determine if one of skill in the art would have understood that *disclosure* to encompass software [to perform the function] and been able to implement such a program, not simply whether one of skill in the art would have been able to write such a software program'" (quoting *Medical Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1212 (Fed. Cir. 2003) (emphasis in original))); *Blackboard*, 574 F.3d at 1384 ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough." (quoting *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1340-1341 (Fed. Cir. 2008))).

1 voltage conditions, to determine if they indicate the presence of the preselected condition, or to act to
2 control power in response thereto. Indeed, the microprocessor cannot perform the function of
3 controlling power "in response to a preselected condition" without knowing if the preselected
4 condition is present, and it cannot know if the preselected condition is present without taking steps,
5 which are not disclosed in the specification, to detect a voltage condition and determine if the
6 detected condition is the preselected condition. While the person skilled in the art would know there
7 are many different ways to program the microprocessor 24 to carry out the recited function, that
8 person would fail to find in the '930 specification an adequate description of the algorithm steps the
9 microprocessor (together with the A/D converter and switch) should perform to carry it out. Ex. 3
10 (Colwell Decl.) at ¶¶ 77-80 (¶ 79 contains examples of possible programming or algorithm steps).

11 The description in the specification that has the most semblance to an algorithm is disclosed
12 with respect to Figure 1:

> Detector 22 includes an A/D converter and microprocessor control unit 24, *operating* a detection circuit consisting of a resistor 26, with shunting switch 28, both connected in parallel to a resistor 30, providing a path to ground. Switch 28 is actually an ***internal software controlled switch*** depicted diagrammatically as actuated by operator 32.

16 Ex. 1 ('930 patent) col. 2:59-65 (emphasis added). But this description is no algorithm at all because
17 no specific steps for the microprocessor are disclosed. Figure 1 is merely a schematic of a circuit
18 and not itself an algorithm for the microprocessor. Indeed, Mr. Katzenberg, one of the inventors of
19 the '930 patent, admits that such a circuit schematic does not disclose a methodology to detect if a
20 device is remotely powerable:

21   Q. And you agree with me there is no programming in these schematics for this
22 microprocessor?
23   A. There is – **programming is not shown on schematics**.
24   Q. And the microprocessor will only do what it's programmed to do?
25   A. That is correct.
26   Q. And if the microprocessor is not programmed to operate the A to D converter to read the
27 voltage across these resistors it won't do it?
28

1     A. That's correct.

2     Q. And nothing in here, in this exhibit indicates that the microprocessor was programmed to do that?

4     A. **A schematic diagram would not indicate that this device has been programmed or not.** It only shows physical interconnections.

Ex. 4 (excerpts from the deposition of Boris Katzenberg, taken May 12 and 13, 2009) at 396-98, 400, 403-04 (emphasis added).

The cited portion of the specification merely identifies the components of Figure 1 and their interconnections. What it describes about the operation of the microprocessor is that it is used to "operate" the detection circuit, and that switch 28 is "an internal software controlled switch." This description does not adequately describe the steps taken by microprocessor in operating the detection circuit, or the steps taken by the microprocessor in opening and closing the switch, and so is inadequate as an algorithm. Ex. 3 (Colwell Decl.) at ¶¶ 76-77, 82.

Federal Circuit precedent requires much more than merely stating that the microprocessor is used to "operate" or "control" another device. It must specifically show the steps that the microprocessor takes in operating or controlling that device. *See Blackboard*, 574 F.3d at 1384 ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough."); *See also Aristocrat Techs.*, 521 F.3d at 1334 (When language in the specification 'simply describes the function to be performed, not the algorithm by which it is performed,' the claim term does not escape indefiniteness. This is true even when language in the specification is so specific that it may allow one skilled in the art to devise an algorithm with sufficient structure.). Indeed, neither "operates" nor "software controlled" says anything to identify or limit the dozens of ways the microprocessor could function to operate the detection circuit or control the switch, let alone the dozens of ways it could carry out the entire recited function of the "control means." *Aristocrat Techs.*, 521 F.3d at 1333 ("[b]ecause general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the

corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6." (emphasis in original)). *Cf. Gobeli Research, Ltd. v. Apple Computer Inc.*, 384 F. Supp. 2d 1016, 1022 (E.D. Tex. 2005) (invalidating means-plus-function limitation for failure to provide the algorithm in the specification; "Gobeli could have provided figures or flow charts that describe the algorithm. Gobeli also could have attached actual code to the patent that would set out the necessary algorithm. None of these options was exercised by the patentee.").

Network-1 argues in its Claim Construction Brief that the '930 specification identifies a two-step algorithm in which the microprocessor "compares" the voltage condition to the preselected condition, and then controls the power to the access device accordingly. *See* Ex. 2 (Plaintiff Network-1's Claim Construction Brief (P.R. 4-5(a))) at 27. However, nowhere does the '930 specification say that the microprocessor "compares" the voltage conditions with a preselected condition, or explain how this comparison is performed. The person skilled in the art would know there are many ways the microprocessor could determine if a voltage condition is a preselected condition (so that the microprocessor could respond to it), but the '930 specification does not identify or describe even one particular way, let alone "comparing." Ex. 3 (Colwell Decl.) at ¶¶ 79-80, 83. At most, Network-1 points for support to Figure 1 and what it calls the "corresponding text," reproduced above. However, as noted, Figure 1 is a circuit schematic, not an algorithm, and the "corresponding text" says nothing more than that the microprocessor "operates" the detection circuit shown as part of Figure 1 without in any way describing how the microprocessor "operates" the circuit, or the steps it takes to do so.

In short, the '930 specification fails to disclose a sufficient algorithm for the microprocessor to perform the recited function of the "control means" element. As a result, the specification fails to provide the required structure for the "control means," and therefore, claims 1 and 2 are invalid as indefinite under 35 U.S.C. § 112, ¶ 2 as a matter of law.

### C. Claim 9 Of The '930 Patent Is Invalid As Indefinite Pursuant To 35 U.S.C. §112, ¶ 2

Pursuant to 35 U.S.C §112, ¶ 2, a patent must "particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention." Whether a claim satisfies the definiteness requirement is a question of law to be decided by the Court. *Atmel,* 198 F.3d at 1378.

The term "continuing to sense voltage level" appears in claim 9, which depends directly from claim 6. Claim 6 recites two power sources, a main power source and a secondary power source. However, neither claim 9 nor claim 6 define the term voltage level or specify the source of the voltage level that is being sensed. Similarly, the specification of the '930 patent does not specify the source of the voltage being sensed. Claim 9 is indefinite because the claims and the specification of the '930 patent fail to disclose the source of the voltage level recited in the "continuing to sense voltage level" element.

## V. CONCLUSION

This motion presents a pure question of law and requires no further discovery. Deciding this motion at the present time will reduce judicial and party resources by reducing the number of claims being asserted in this case.

Defendants respectfully request that this Court enter judgment declaring claims 1, 2, and 9 of the '930 patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Dated: October 7, 2009

Respectfully submitted,

/s/ Eric H. Findlay
Eric H. Findlay (SBN 00789886)
Findlay Craft, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com

Of Counsel:

| | |
|---|---|
| William F. Lee – Lead Attorney (Massachusetts SBN 291960) (admitted *pro hac vice*) WILMER CUTLER PICKERING HALE AND DORR LLP 60 State Street Boston, MA 02109 Tel: (617) 526-6000 Fax: (617) 526-5000 william.lee@wilmerhale.com | William Cornelius (SBN 04834700) WILSON, ROBERTSON & CORNELIUS, P.C. P.O. Box 7339 Tyler, Texas 75711-7339 Tel: (903) 509-5000 Fax: (903) 509-5091 wc@wilsonlawfirm.com |
| Mark Selwyn (California SBN 244180) (admitted *pro hac vice*) William J. Bohler (California SBN 141970) (admitted *pro hac vice*) Niki Z. Moore (California SBN 244968) (admitted *pro hac vice*) WILMER CUTLER PICKERING HALE AND DORR LLP 1117 California Avenue Palo Alto, California 94304 Tel: (650) 858-6000 Fax: (650) 858-6100 mark.selwyn@wilmerhale.com william.bohler@wilmerhale.com niki.moore@wilmerhale.com | Richard C. Vasquez (California SBN 127228) (admitted pro hac vice) Jeffrey T. Lindgren (California SBN 176400) (admitted pro hac vice) Craig E. Davis (California SBN 221356) (admitted pro hac vice) VASQUEZ BENISEK & LINDGREN LLP 3685 Mt. Diablo Blvd, Suite 300 Lafayette, CA 94549 Tel: (925) 627-4250 Fax: (925) 403-0900 rvasquez@vbllaw.com jlindgren@vbllaw.com cdavis@vbllaw.com |
| **ATTORNEYS FOR CISCO SYSTEMS, INC. AND CISCO-LINKSYS, LLC** | **ATTORNEYS FOR DEFENDANT ENTERASYS NETWORKS, INC.** |

| | | |
|---|---|---|
| 1 | | |
| 2 | Henry C. Bunsow (California SBN 60707) | Melvin R. Wilcox, III (SBN 21454800) |
| 3 | K.T. Cherian (California SBN 133967)<br>Constance F. Ramos (California SBN 203637) | YARBROUGH WILCOX, PLLC<br>100 E. Ferguson St., Suite 1015 |
| 4 | John D. Hamann (Georgia SBN 320109)<br>Subroto Bose (California SBN 230339) | Tyler, Texas 75702<br>Tel:  (903) 595-1133 |
| 5 | HOWREY LLP<br>525 Market Street, Suite 3600 | Fax:  (903) 595-0191<br>mrw@yw-lawfirm.com |
| 6 | San Francisco, California 94105<br>Tel: (415) 848-4900 | Jeffrey E. Ostrow (California SBN |
| 7 | Fax: (415) 848-4999<br>bunsowh@howrey.com | 213118 )<br>(admitted pro hac vice) |
| 8 | cheriank@howrey.com<br>ramosc@howrey.com | SIMPSON THACHER &<br>BARTLETT LLP |
| 9 | hamannj@howrey.com<br>boses@howrey.com | 2550 Hanover Street<br>Palo Alto, CA  94304 |
| 10 | **ATTORNEYS FOR DEFENDANT** | Tel:  (650) 251-5000<br>Fax:  (650) 251-5002 |
| 11 | **AND COUNTERCLAIMANT**<br>**FOUNDRY NETWORKS, INC.** | jostrow@sbtlaw.com |
| 12 | | **ATTORNEYS FOR DEFENDANT**<br>**3COM CORPORATION** |
| 13 | | |
| 14 | David D. Bahler – Lead Attorney<br>(SBN 01513100) | Kenneth R. Adamo (SBN 00846960)<br>Lead Attorney |
| 15 | Gilbert A. Greene (SBN 24045976)<br>FULBRIGHT & JAWORSKI LLP | JONES DAY<br>2727 North Harwood Street |
| 16 | 600 Congress Avenue, Suite 2400<br>Austin, TX  78701 | Dallas, TX  75201-1515<br>Tel:  (214) 220-3939 |
| 17 | Tel:  (512) 474-5201<br>Fax:  (512) 536-4598 | Fax:  (214) 969-5100<br>kradamo@jonesday.com |
| 18 | dbahler@fulbright.com<br>ggreene@fulbright.com | Behrooz Shariati (California SBN |
| 19 | **COUNSEL FOR DEFENDANT** | 174436)<br>Eric Cha (California SBN 204538) |
| 20 | **ADTRAN, INC.** | (admitted pro hac vice)<br>JONES DAY |
| 21 | | 1755 Embarcadero Road<br>Palo Alto, CA  94303 |
| 22 | | Tel:  (650) 739-3939<br>bshariati@jonesday.com |
| 23 | | echa@jonesday.com |
| 24 | | **ATTORNEYS FOR DEFENDANT**<br>**EXTREME NETWORKS, INC.** |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

- 13 -

DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT OF INVALIDITY FOR INDEFINITENESS
Case No. 6:08-CV-030

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 7, 2009

/s/ Eric H. Findlay
Eric H. Findlay