**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| NETWORK-1 SECURITY SOLUTIONS, INC., | CASE NO. 6:08-CV-030-LED |
| Plaintiff, | **JURY DEMANDED** |
| vs. | |
| CISCO SYSTEMS, INC., et al, | |
| Defendants. | |

**Plaintiff Network-1's Motion to Compel Interrogatory Responses and Deposition Testimony from Defendants providing the basis for their non-infringement defenses**

## I.      Introduction.

In most if not every patent infringement case, the defendant will assert in its answer and counterclaims that it does not infringe the plaintiff's patent. The plaintiff is entitled to discover the basis for those assertions. Not at the end of the discovery period, after all the documents have been produced and depositions conducted, but at the *start – i.e.*, as soon as the defendant asserts that it does not infringe there must presumably be some basis for that position and the plaintiff is entitled to know it once discovery starts. This allows the plaintiff to identify and analyze the defendant's non-infringement positions and evidence, obtain testimony and other evidence to explore and refute the defendant's positions, and to incorporate that evidence and analysis into the plaintiff's claim constructions, expert reports, dispositive motions, and overall strategy. These are the same benefits that flow in mirror to the defendant from its early receipt of a plaintiff's infringement contentions and supporting evidence.

In this case, Network-1 sued Defendants Cisco Systems, Inc., Cisco-Linksys, L.L.C., Extreme Networks, Inc., Enterasys Networks, Inc., 3Com Corporation, Foundry Networks, Inc., and Adtran, Inc. for infringing U.S. Patent No. 6,218,930. Defendants denied in their pleadings that they infringe and asserted non-infringement counterclaims. Network-1 served

interrogatories asking Defendants to identify and provide the basis for their non-infringement positions.  Network-1 also served 30(b)(6) deposition notices asking Defendants to produce witnesses who could provide the basis supporting their non-infringement positions.  Defendants refused.  They object to this discovery primarily on the ground that it is premature for Network-1 to seek this information prior to, and outside the context of, their rebuttal expert reports.  These objections are without merit and must be overruled.

## II.    Factual background.

### A.    Discovery at issue

The discovery at issue falls into two related categories:  (1) interrogatories asking Defendants to set forth their non-infringement contentions and supporting evidence, and (2) 30(b)(6) deposition topics asking for witnesses that can testify to the basis for their contentions.

#### 1.    Network-1's interrogatories

On November 4, 2008, Network-1 served a common interrogatory no. 1 to each Defendant asking each to:

> Set forth in specific detail each fact, argument, inference, and document that supports your contention that you have not infringed (directly, contributory, or by inducement) any claim of the '930 Patent (including the name, address, and telephone number of each person who has knowledge or possession of each such fact and document).

Exh. 1 at 3-4, 9-10, 16-17, 28-29, 32-33, 41-42, 48.[1]

In response, Defendants asserted various objections that the interrogatory was overbroad, unduly burdensome, and/or irrelevant.  *Id.*  In addition, each Defendant refused to provide a substantive response to the interrogatory on the ground that it called for the premature disclosure of claim construction positions and expert opinions.  *Id.*

#### 2.    Network-1's 30(b)(6) deposition notices

On September 1, 2009, Network-1 served 30(b)(6) deposition notices asking each Defendant to produce a witness to provide the basis for its non-infringement contentions.  Each

---

[1] Exhibit 1 compiles Defendants' respective written objections to Network-1's interrogatory no. 1.  The PDF document is "bookmarked" for each respective response.

notice included the following topic no. 48: "The basis for your contention that you have not and do not infringe claims 1, 2, 6 or 9 of the '930 Patent." Exh. 2 at 7, 14, 23, 32, 36.[2] Each Defendant served various written objections to this topic, including objections based on undue burden, privilege, and/or the ground that the topic called for the premature disclosure of claim constructions or expert opinions. *Id.* Certain Defendants expressly stated in their written objections that they refused to produce a witness on this topic. *Id.* at 14, 23.

In addition, each deposition notice included topics specific to each asserted claim of the '930 Patent, seeking to identify Defendants' basis for disputing their infringement of that claim. For example, topic no. 3 requested a witness to testify on: "The detailed identification of all facts and documents that address whether [Defendant's] Power Sourcing Equipment, used in connection with a Powered Device, include each part of each of the following elements from claim 1 of the '930 Patent [elements then listed and numbered a-g]."[3] Exh. 2 at 4-5, 9-10, 18-19, 27-28, 36-37. In response to topic 3, and identical topics for the other asserted claims (topic nos. 4-6), each Defendant served various written objections, similar to how they handled topic no. 48. In addition, several Defendants expressly stated in their objections that they refused to provide a witness. *Id.* at 10-13, 19-22.

To date, only Defendant Adtran has produced a 30(b)(6) witness on any topics. But this deposition did not go well. On September 23, 2009, Adtran produced its chief technical officer, Kevin Schneider, as its 30(b)(6) designee on all noticed topics (including topics 48 and 3-6):

```
24        Q.  Do you understand that you're the
25   Adtran designee with respect to all the
```

---

[2] Exhibit 2 compiles Defendants' respective written objections to Network-1's 30(b)(6) deposition notices, excluding responses from Defendants Extreme and Foundry (who did not serve written objections). The PDF document is "bookmarked" for each respective response.

[3] The notice defined "Power Sourcing Equipment" as "switches that supply power through Ethernet cables to Powered Devices (defined below), including the products identified in Network-1's Infringement Contentions (defined below) as 'power sourcing equipment (data nodes).'" "Powered Devices" was defined as "devices that receive operating power over Ethernet cables (*e.g.*, security cameras, IP phones, wireless access points, etc.) including the products identified in Network-1's Infringement Contentions as 'powered devices (access devices).'"

```
 1   topics listed in Exhibit 301 and 302?
 2      A.  Yes.
 3      Q.   And you're prepared to testify
 4   about those topics?
 5      A.  Yes.
```

Adtran 30(b)(6) at 16:24 – 17:5.[4]  Dr. Schneider refused, however, to reveal any factual basis for

Adtran's pleaded assertions that it does not infringe:

```
 5      Q.   In paragraph 11, Adtran alleges
 6   that it does not and has not infringed,
 7   directly or indirectly, any valid claim of
 8   the 930 Patent, either literally or under the
 9   doctrine of equivalents.
10          Can Adtran tell me any facts that
11   support its allegation in paragraph 11 of
12   this first counterclaim?
13          MR. BAHLER:  Same objection.
14      A.  I can't answer that today.
15      Q.   (By Mr. Luner) No facts that
16   Adtran can provide to support its allegation
17   today?
18      A.  I cannot answer that today.
```

*Id.* at 189:5-18.

```
25      Q.   So, today, you know of facts; but
```

```
 1   you're asserting that they're attorney -- you
 2   are asserting that they are covered by the
 3   attorney/client privilege?
 4      A.  Yes.
 5      Q.   And, as I sit here today, there's
 6   no way for me to find out what those facts
 7   are?
 8      A.  That is correct.
```

*Id.* at 190:25 – 191:8.

Subsequent to the deposition, Network-1 began meet and confer discussions regarding

Adtran's refusal to disclose the basis of its non-infringement assertions.  At the same time,

---

[4] Deposition exhibit 302 was the 30(b)(6) notice that included the infringement related topics this relating to this motion.

Network-1 was attempting to secure deposition dates for the other Defendants' 30(b)(6) depositions. The two processes merged into a global meet and confer, during which the remaining Defendants – including those that had not previously objected to the noticed topics wholesale in their written objections – adopted Adtran's position and asserted that they would not be producing witnesses to testify regarding topic 48, topics 3-6, and several others.[5] Although Adtran's position at the deposition was based in notions of privilege, the objection of the defense group to these topics is primarily the same as their objection to interrogatory no. 2: Defendants assert that these deposition topics are improper subjects of examination for their 30(b)(6) witnesses and that they call for information that need not be disclosed prior to the Court's claim construction ruling and the expert rebuttal reports.

### B. The meet and confer process.

As mentioned briefly above, the meet and confer process relating to this motion resulted from separate discussions that evolved into one global meet and confer. The process began with Network-1's attempt to meet and confer with Adtran regarding its 30(b)(6) deposition testimony and its failure to provide a response to Network-1's interrogatory no. 1. As part of these discussions, Adtran responded by taking issue with Network-1's objections to Defendants' joint interrogatories regarding validity issues and thus those objections were folded into the discussion as well.[6] In addition, concurrent with the Adtran meet and confer process, Network-1 was attempting to secure dates for the 30(b)(6) depositions of the other Defendants and also asked to

---

[5] For purposes of this motion, we focus on topics 48 and 3-6. Defendants object to several other similar topics on the same grounds. Thus, Plaintiff expects that resolving this motion on this subset of topics will resolve the parties' dispute on the other topics.

[6] Defendants' interrogatory no. 1 asks Network-1, in essence, to reverse chart 36 separate patents and publications that Defendants contend anticipate the asserted '930 Patent. Network-1 objected on several grounds, including the ground that the interrogatory was compound given the number of prior art references it covered. Defendants' interrogatory no. 7 asks Network-1 to set forth its positions and evidence regarding objective indicia of nonobviousness. Network-1 objected to this interrogatory on several grounds as well. Network-1 has reconsidered its objections and will be providing a supplemental response to this interrogatory shortly.

meet and confer regarding their similar objections to interrogatory no. 1.  The events leading immediately up to this motion were as follows:

- On November 3, 2009, Network-1 made the following proposal regarding Network-1's interrogatory no. 1 to Defendants and their interrogatory no. 2 to Network-1:

   1.      Network-1 provides a supplemental, substantive response to interrogatory no. 1 for one prior art reference to be identified by Defendants.  Network-1 will provide responses for up to two additional references identified by Defendants provided that each additional reference is counted toward Defendants' allotment of interrogatories under the Discovery Order.

   2.      Defendants will each provide supplemental, substantive responses to Network-1's interrogatory no. 1 for one of their respective accused instrumentalities to be identified by Network-1.  Defendants will provide responses for up to two additional products to be identified by Network-1 provided that each additional product is counted toward Network-1's allotment of interrogatories under the Discovery Order.

Exh. 3 at 4.[7]

- On November 9, Defendants ultimately responded by rejecting the proposal and making a counter-proposal that also addressed Network-1's 30(b)(6) deposition topics address to non-infringement issues:

   [1]      Defendants will collectively respond to this interrogatory [Network-1's interrogatory no. 1] with a substantive response that identifies, without prejudice to Defendants' right to amend, revise, or supplement the response as the case develops, or the right to assert different or additional grounds in the expert reports, which elements of the asserted claims are not present in the accused products.  This interrogatory continues to count as only one interrogatory against Network-1's limit in the Discovery Order.

   [2]      NW-1 will respond to this interrogatory [Defendants' interrogatory no. 1] with a substantive response that identifies, without prejudice to NW-1's right to amend, revise, or supplement the response as the case develops, or the right to assert different or additional grounds in the expert reports, which elements of the asserted claims are not present in the prior art references identified in Defendants' invalidity contentions.  This interrogatory continues to count as only one interrogatory against Defendants' limit in the Discovery Order.

---

[7] Exhibit 3 is an e-mail chain of meet and confer discussions between counsel for the parties.  The earliest part of the email chain starts on page 5 of the exhibit and then goes in chronological order backing up to page 1.

[3]     NW-1's Rule 30(b)(6) deposition notices: Defendants will each provide a Rule 30(b)(6) witness to testify as to, among other things, how their respective accused products operate, and Network-1 will withdraw its Rule 30(b)(6) deposition topics that pertain to the issues of claim construction, non-infringement, or invalidity.

Exh. 3 at 1-2.

- On November 9 (later that evening), Network-1 rejected Defendants' counter-proposal and requested that the parties meet and confer by telephone. *Id.* at 1. Defendants' proposal was rejected to because:

 (a) Defendants refuse to produce a 30(b)(6) witness to provide the basis for their non-infringement defenses and counterclaims;

 (b) Defendants' proposed to answer interrogatory no. 1, but with such heavy qualification that their responses would be meaningless. By proposing that they be permitted to amend, change, or entirely supplant their non-infringement contentions down the road, Defendants sought to guarantee the ability to game the system. While Network-1 sits locked into its infringement contentions, Defendants, in contrast, would be free to disclose one set of <u>non</u>-infringement contentions, sit back as Network-1 relies on those, and then come back at the end of the day in their expert reports with a whole new set of non-infringement contentions not addressed by Network-1 in discovery or in its expert reports; and

 (c) Defendants' proposal failed to acknowledge or address the compoundness of their interrogatory to Network-1, which purports to cover 36 separate prior art references. *Id.*

- On November 10, the parties' lead and local counsel met and conferred by telephone conference. The parties were unable to reach an informal resolution of this dispute and Network-1 informed Defendants that it would be filing this motion.

* * *

During the meet and confer process Network-1 provided Defendants with relevant caselaw from this district on each issue this motion addresses. Specifically, Network-1 provided Magistrate Judge Love's order in *Performance Pricing, Inc. v. Google, Inc.*, Case no. 2:07-cv-00432-LED-JDL (dkt#194) (E.D. Tex., May 27, 2009), where the Court ordered the defendant to respond to the *identical* interrogatory served in this case and to provide a 30(b)(6) witness to

testify on an *identical* deposition topic to topic no. 3 served here, overruling the *same* objections asserted by Defendants here. In addition, in support of its objection to Defendants' interrogatory no. 1, Network-1 directed Defendants to this Court's order in *Orion, IP v. Staples, Inc. et al.*, Case no. 2:04-cv-297 (dkt# 171) (E.D. Tex 2005), in which a compound objection to a similar interrogatory was sustained. Defendants have not made any attempt to distinguish either case.

## III.    Argument.

### A.    The information sought is relevant and discoverable.

Network-1 is entitled to a response to its interrogatory and to a witness on the noticed topics because the information sought is relevant and not privileged. *ReedHycalog UK, Ltd. v. United Diamond Drilling Servs.*, 2008 U.S. Dist. LEXIS 93177, *6-7 (E.D. Tex. Oct. 3, 2008) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense"); Fed. R. Civ. P. 26(b). Each Defendant asserted in its pleadings that it does not infringe Network-1's '930 Patent. Defendants' non-infringement contentions, and the factual basis for those contentions, is clearly relevant to those assertions.

### B.    Defendants' objections must be overruled.

Despite their many objections, Defendants do not rely on any objection that Network-1's interrogatory or deposition topics seek information that is not relevant. They have instead asserted three closely related objections. None has merit.

#### 1.    The privilege / timing objection

This is the objection asserted by Adtran's 30(b)(6) witness when asked to provide the basis for Adtran's non-infringement contentions, as shown above.[8] The objection is without merit. As shown above, the questions that were asked of the Adtran witness – pursuant to the noticed categories regarding Adtran's non-infringement contentions – expressly sought the factual basis for Adtran's contentions. Not the advice, opinions, or work product of Adtran's

---

[8] The other Defendants have not wholesale objected to Network-1's interrogatory no. 1 or deposition topics on privilege grounds. They instead assert objections "to the extent that" the discovery seeks privileged information. However, a ruling on Adtran's objection will address the discovery to all Defendants and avoid the possibility that other Defendants raise similar objections when their depositions go forward.

counsel or any communications between Adtran and its counsel. If Adtran has valid grounds for disputing that it infringes, Network-1 is entitled to learn the factual basis of those grounds. If Adtran has no basis for its contentions, then Network-1 is entitled to learn that as well.

Defendants also stated during the meet and confer process that "Defendants stand by their respective objections to Network-1's interrogatory no. 1, including that the information sought is protected from disclosure *at this stage* by the attorney-client privilege and/or work product doctrine." Exh. 3 at 5 (emphasis added). This is not a true privilege objection, it is an objection based on timing. That is, Defendants are not claiming that the interrogatory seeks information that is categorically privileged – such as the communications between Defendants and their attorneys, or the work product of their attorneys. They are instead claiming that Network-1 is not "at this stage" entitled to the information sought. This objection is without merit.

As the courts in this district have repeatedly held, "one party may not unilaterally decide when to withhold discovery." *Garmin Ltd. v. TomTom, Inc*., 2007 U.S. Dist. LEXIS 74032 at *23 (E.D. Tex. Oct. 3, 2007). "[A]ll discoverable material should always be produced without delay." *MyMail Ltd. v. America OnLine, Inc*., Case No. 6:04-cv-00189 (E.D. Tex. September 28, 2004); *id.* ("Information is discoverable as soon as it becomes relevant; parties do not have authority to determine when information will be disclosed").

Defendants' objection is not only unsupported by authority, it is directly contrary to the rules of discovery and the spirit of patent litigation practice in this district. There is a reason this district adopted Local Rules that require the parties to set forth infringement and invalidity contentions early on in the litigation – it defines the scope of the litigation early on and provides the parties with notice of the other side's contentions and supporting evidence so that they can plan their discovery campaign, identify ambiguities or issues that should be addressed during the *Markman* process, and have sufficient opportunity to fully explore the other party's positions in discovery and develop evidence to rebut those positions. These same reasons apply in mirror to an accused infringer's denials and counterclaims of non-infringement. A plaintiff is entitled to discover the ground on which its opponent denies infringement and the supporting evidence – *as*

*of the time the Defendant makes those denials*, not at the end of the discovery period. This provides the opportunity for the plaintiff to take discovery on those positions, develop counter-evidence and arguments, and incorporate both into its *Markman* and expert analysis. Defendants have deprived Network-1 of that opportunity while at the same time they sit back with the full benefit of Network's infringement contentions. This is not what the rules envision or permit.

## 2. The "claim construction" objection

In response to Network-1's interrogatory no. 2. and the various non-infringement deposition topics noticed by Network-1, Defendants asserted various forms of an objection that the information relates to claim construction issues.

With respect to interrogatory no. 1, each Defendant has objected on the grounds that it would be premature to disclose the information requested under *Jacobs Chuck Manufacturing Co. v. Shandong Weida Machinery,* Case no. 2:05-cv-185-TJW, Dkt# 90 (E.D. Tex., Aug. 18, 2006). *See, e.g.* Exh. 1 at 3-4, 9-10, 16-17, 28-29, 32-33, 41-42, 48. In that case, the Court held that an interrogatory that asked the plaintiffs to identify "each element of the asserted claims . . . that Plaintiffs contend is not disclosed in each of the prior art references cited in Defendants' Disclosure of Preliminary Invalidity Contentions" was premature because it was "in tension with the established time frames for declaring claim construction positions as provided by the Patent Rules." *Jacobs Chuck* at 1. The parties in that case had not yet submitted their Joint Claim Construction and Pre-hearing Statement at the time of the court's order. *See* Case No. 2:05-CV-185, Docket No. 78 (Order granting Motion for Extension (extending the 4-3 deadline to September 8, 2006)). The same was true in this case – at the time Network-1's interrogatory no. 2 was served (in November 2008). But that is no longer the case. All claim construction disclosures in this case have now been made and the *Markman* briefing has recently closed. Thus, to the extent Defendants' interrogatory responses would disclose their claim construction positions, there is nothing premature about that disclosure – it has already been made.

With respect to the deposition topics, Defendants object to producing their witnesses to testify on topics that reference the claim language. For example, in response to topic no. 3

Defendant Cisco objected: "Cisco objects to this subject because Claim 1 contains terms that have not been construed by the Court as a matter of law." Exh. 2 at 9-10. Defendant 3Com asserts its own version of this objection: "3Com objects to this topic because it seeks an improper legal conclusion as to the meaning of claim terms, the proper meaning of which is a legal issue for the Court to determine, and will not permit testimony regarding claim construction matters." *Id.* at 37. The other Defendants assert similar objections, either in their written objections or in their refusal to produce witnesses on these deposition topics. These objections must be overruled for three reasons.

*First*, none of the deposition topics ask Defendants to produce a witness to testify on the meaning of the claim language as Defendants' objections presume.

*Second*, as explained above, Defendants may not refuse to provide witnesses to testify regarding their non-infringement assertions based on the notion that this would prematurely disclose their claim construction positions. Those positions have already been disclosed.

*Third*, a party may not wait until after the claim construction order issues to provide discovery on non-infringement assertions pleaded *prior* to that time. Defendants did not plead in their answers that they did not know whether they infringe and would not know until the Court construes the claims of the patent. They pleaded, under Rule 11, that as of the time their answers were filed (many months ago) they had determined that they did not in fact infringe. There was no qualification and there is no waiting for the claim construction order. Plaintiff is entitled to discovery the basis for those assertions now.

### 3. The expert opinion / timing objection

Similar to the objections addressed above, Defendants object to Network-1's effort to discover their non-infringement contentions on the ground that the information sought need not be disclosed until expert reports are served. With respect to the interrogatory, Defendant Cisco "further objects to this interrogatory to the extent it calls for disclosure of expert opinions prior to the deadlines set forth in the Court's July 17, 2008 Discovery Order." Exh. 1 at 9. Defendant Extreme asserts an identical objection. *Id*. at 29. Each of the other Defendants asserts its own

version of the objection in response to the interrogatory. Similar or identical objections are also asserted by Defendants in their written responses to Network-1's deposition topics. *See, e.g.*, Exh. 2 at 4-7, 10-15, 19-24, 28-33. Defendants' objections are without merit.

As explained above, a party may not unilaterally withhold or delay disclosure of relevant information. *Garmin*, 2007 U.S. Dist. LEXIS 74032 at *23 (E.D. Tex. Oct. 3, 2007). "[A]ll discoverable material should always be produced without delay." *MyMail*, Case No. 6:04-cv-00189 (E.D. Tex. September 28, 2004) ("Information is discoverable as soon as it becomes relevant; parties do not have authority to determine when information will be disclosed"). More specifically, an accused infringer cannot assert in its pleadings – at the start of the litigation, under Rule 11 – that it does not infringe and then choose to withhold the basis for that assertion until the very end of the discovery process when it serves its expert rebuttal report. Indeed, courts in this district have expressly rejected this gamesman approach. In *Performance Pricing, Inc. v. Google, Inc., et al.*, the plaintiff served the exact same interrogatory at issue here and noticed a deposition on the exact same subject as topics 3-6 here (except the discovery concerned the patent in that case, not this one) and the defendant refused to provide the discovery on the exact same grounds.[9] The court overruled the objections. Exh. 4 (*Performance Pricing, Inc. v. Google, Inc., et al.*, Case no. 2:07-cv-432 (E.D. Tex., May 27, 2009)) at 2 ("Defendant is **ORDERED** to respond to Plaintiff's Interrogatory No. 1, to the extent it has not already done so . . . Defendant is further **ORDERED** to produce a witness to testify to the facts and documents forming the basis for its noninfringement position within thirty (30) days of this order" (emphasis in original)). Network-1 brought this authority to Defendants' attention during the

---

[9] The interrogatory at issue in that case stated: "Set forth in specific detail each fact, opinion, argument, inference, and Document that supports your contention that you have not infringed any claim of the '235 Patent (including the name, address, and telephone number of each person who has firsthand knowledge or possession of each such fact, opinion, and Document)." Exh. 5 (Dkt.# 179 in Case no. 2:07-cv-00432 LED-JDL) at 2. The deposition topic at issue was also identical to those noticed here: "A detailed identification of all facts and documents that address whether Google's Accused Systems include each part of each of the following steps [a through g] from the '253 patent." *Id.* at 2-3.

meet and confer process.  Exh. 3 at 3-4 (email sent November 3, 2009).  Defendants have not even attempted to distinguish this case from the *Performance Pricing* case.

**IV.  Conclusion.**

The information Network-1 seeks is relevant and discoverable.  Defendants have no valid basis for stonewalling Network-1's efforts to discover Defendants' noninfringement contentions and the factual basis for those contentions.  Accordingly, Network-1 requests an order compelling Defendants to respond to interrogatory no. 1 and to produce a witness to testify to the basis of their non-infringement contentions pursuant to noticed topics 3-6 and 48.  A proposed order is attached.

Dated:  November 13, 2009       Respectfully submitted,

By: /s/ Sean A. Luner

     Sean A. Luner
     State Bar No. 165443
     Gregory S. Dovel
     State Bar No. 135387
     Dovel & Luner, LLP
     201 Santa Monica Blvd., Suite 600
     Santa Monica, CA 90401
     Telephone: 310-656-7066
     Facsimile: 310-657-7069
     Email: sean@dovellaw.com
     Email: greg@dovellaw.com

     T. John Ward, Jr.
     State Bar No. 00794818
     Ward & Smith Law Firm
     111 W. Tyler St.
     Longview, Texas 75601
     Telephone: (903) 757-6400
     Facsimile: (903) 757-2323
     Email: jw@jwfirm.com

     ATTORNEYS FOR PLAINTIFF,
     NETWORK-1 SECURITY SOLUTIONS,
     INC.

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing document was served, via E-mail, on counsel for Defendants this 13th day of November, 2009.

/s/ Sean A. Luner

**CERTIFICATE OF CONFERENCE**

I am lead trial counsel for Plaintiff Network-1 Security Solutions, Inc. Along with my co-counsel Jeff Eichmann and local counsel T. John Ward, I participated in a meet and conference pursuant to Local Rule CV-7(h) regarding the subject of this motion. The conference took place by telephone on November 10, 2009 beginning at 2:00 pm P.T with counsel for each of the Defendants participating. The parties were not able to reach an informal resolution of this dispute and it is clear that motion practice is necessary to resolve this dispute.

/s/ Gregory S. Dovel
Lead trial counsel

/s/ Jeff Eichmann
Co-counsel

/s/ T. John Ward
Local counsel