# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

NETWORK-1 SECURITY SOLUTIONS, INC., a Delaware corporation,

    Plaintiff,

vs.

CISCO SYSTEMS, INC., a California corporation; CISCO-LINKSYS, L.L.C., a California Limited Liability Company; ADTRAN, INC., a Delaware corporation; ENTERASYS NETWORKS, INC., a Delaware corporation; EXTREME NETWORKS, INC., a Delaware corporation; FOUNDRY NETWORKS, INC., a Delaware corporation; NETGEAR, INC., a Delaware corporation; 3COM CORPORATION, a Delaware corporation,

    Defendants.

Case No. 6:08cv030-LED

**ORAL ARGUMENT REQUESTED**

## DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY FOR INDEFINITENESS

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... ii

I.     INTRODUCTION .............................................................................................................1

II.    ARGUMENT .....................................................................................................................1

        A.     An Algorithm Must Be Disclosed For The "Control Means" Element. ........................1

        B.     The Specification Does Not Disclose A Two-Step "Comparing" Algorithm. .............5

        C.     Even With A Two-Step "Comparing" Algorithm, Claim 1 Is Indefinite. ....................9

        D.     In Failing To Identify A Power Source, Claim 9 Is Indefinite ...................................10

III.   CONCLUSION ................................................................................................................10

# TABLE OF AUTHORITIES

Federal Cases

*Alcatel USA Sourcing, Inc. v. Microsoft Corp.*,
 No. 6:06 CV 499, 2008 WL 3914889, at *17-18 (E.D. Tex. Aug. 21, 2008) ...................... 4, 5

*Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*,
 521 F.3d 1328, 133 (Fed. Cir. 2008)......................................................................... 2, 3, 6, 8, 9

*Atmel Corp. v. Information Storage Devices, Inc.*,
 198 F.3d 1374, 1378 (Fed. Cir. 1999) ................................................................................... 10

*Biomedino, LLC v. Waters Technologies Corp.*,
 490 F.3d 946, 953 (Fed. Cir. 2007)......................................................................................... 6

*Blackboard, Inc. v. Desire2Learn, Inc.*,
 574 F.3d 1371, 1385 (Fed. Cir. 2009).............................................................................. 6, 8, 9

*Budde v. Harley-Davidson, Inc.*,
 250 F.3d 1369, 1376 (Fed. Cir. 2001)..................................................................................... 9

*Harris Corp. v. Ericsson Inc.*,
 417 F.3d 1241, 1253 (Fed. Cir. 2005)............................................................................. 4, 5, 6

*Jeneric/Pentron, Inc. v. Dillon Co., Inc.*,
 1999 U.S. Dist. LEXIS 6990 (D. Conn. 1999), aff'd, 205 F.3d 1377, 54 USPQ2d 1086
 (Fed. Cir. 2000) .................................................................................................................... 10

*Med. Instrumentation & Diagnostics Corp. v. Elekta AB*,
 344 F.3d 1205 (Fed. Cir. 2003).............................................................................................. 4

*Net MoneyIN, Inc. v. Verisign, Inc.*, 545 F.3d 1359 (Fed. Cir. 2008).................................................. 8

*S3, Inc. v. Nvidia Corp.*,
 259 F.3d 1364 (Fed. Cir. 2001).............................................................................................. 4

*Union Pacific Resources Company v. Chesapeake Energy Corporation*,
 236 F.3d 684, 691-92 (Fed. Cir. 2001) .................................................................................. 9

Federal Statutes

35 U.S.C. § 112................................................................................................................ 1, 2, 10

Other Authorities

U.S. Patent No. 6,218,930.................................................................................................... 2

## I. INTRODUCTION

Network-1's contention that an algorithm is *only* required when *only* a microprocessor is disclosed as corresponding structure to a means-plus-function claim element is contrary to the established precedents of the Federal Circuit and of this Court. Contrary to Network-1's assertion, whenever the corresponding structure for a means-plus-function element includes a microprocessor that is involved in performing the recited function, the patent must disclose an algorithm, or the claim is indefinite. Network-1 does not dispute that a microprocessor is corresponding structure to the "control means" element of claim 1 and performs the recited function of that element. Because the '930 patent fails to disclose an algorithm for the microprocessor to perform that function, claim 1 is indefinite.

Network-1's fallback position that if an algorithm is required, the '930 patent discloses a two-step algorithm that simply "compares" a detected voltage with a preselected condition also fails because Network-1 fails to identify anywhere in the patent that discloses or even suggests such an algorithm. At most, Network-1's arguments merely suggest a person of ordinary skill could devise such an algorithm, but the law requires more -- the patent must actually disclose the algorithm. What the patent actually discloses, while not an algorithm, demonstrates that whatever algorithm might be devised must necessarily involve a complex differentiation of several different voltage conditions -- not a simple comparison. Claims 1 and 2 are therefore indefinite.

With respect to claim 9, the claim fails to distinguish which power source is the origin for the voltage that is continued to be sensed. Therefore, the claim fails to particularly point out the invention being claimed and is indefinite.

## II. ARGUMENT

### A. An Algorithm Must Be Disclosed For The "Control Means" Element.

Network-1's opposition is based on the premise that to meet the requirements of 35 U.S.C. § 112, ¶ 6 for the "control means" element, the '930 patent need not disclose an algorithm because it discloses "*some* structure" corresponding to the "control means" that is in addition to a microprocessor. (Network-1 Opp. at 2-3, 8.) That premise is fundamentally flawed as a matter of fact and of law.

Initially, as defendants' technical expert, Dr. Colwell, explained, a person of ordinary skill in the art understands that by itself and without programming or an algorithm, a microprocessor is not capable of performing any function, and that is true whether the microprocessor stands alone or is combined with other structure. (*See* Defendants' Motion, Ex. 3, Declaration of Robert F. Colwell Regarding Claim Construction of U.S. Patent No. 6,218,930 ("Colwell Dec.") at ¶¶ 72, 84, 77.) Network-1 does not dispute these central facts, and therefore cannot dispute that without an algorithm for the microprocessor corresponding to the "control means," the combination of the microprocessor, A/D converter, and switch cannot perform the recited function of the "control means," i.e., "to control power supplied by said secondary power source to said access device in response to a preselected condition of said voltage level."[1]  Because the microprocessor, A/D converter, and switch cannot perform the recited function of the "control means" without an algorithm, and because the '930 patent discloses no algorithm, the '930 patent does not comply with the requirements of 35 U.S.C. § 112, ¶ 6, even though it discloses "some" structure corresponding to the "control means."

Network-1's contention also is clearly contrary to the Federal Circuit's *Aristocrat* decision. In *Aristocrat*, the Federal Circuit explained that the reason an algorithm must be disclosed for a general purpose microprocessor or computer corresponding to a means-plus-function element is "because general purpose computers can be programmed to perform very different tasks in very different ways." *Aristocrat Techs. Austl. Pty. Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 133 (Fed. Cir. 2008). Accordingly, "simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112, par. 6." *Id*. (emphasis in original). Network-1's contention that no algorithm is required when a patent merely discloses "some" structure in addition to a microprocessor is completely contrary to *Aristocrat* because, even with "some" additional structure, to the extent the microprocessor is involved in performing the claimed

---

[1] Network-1's "some structure" contention also is illogical and could lead to patent drafting mischief because the mere disclosure of some generic structure, like a connecting wire, that adds nothing to the microprocessor's ability to perform the recited structure, nevertheless would make it unnecessary to disclose an algorithm. A clever draftsman could thus effectively claim functionality while avoiding the requirements of § 112, par. 6.

function, it (and hence the entire structure) can still be programmed to perform very different tasks in very different ways, and therefore the scope of the claim is not limited to "'the corresponding structure, material, or acts' that perform the function, as required by section 112, par. 6." *Id*.[2] Network-1's contention that the '930 patent's disclosure of the A/D converter and switch in addition to the microprocessor "avoid[s] the Federal Circuit's concern of 'purely functional claiming'" (Network-1 Opp. at 4) is therefore contrary to *Aristocrat*, and is erroneous as a matter of law.[3]

Network-1 also reads the holding of *Aristocrat* too narrowly. *Aristocrat* did not hold that an algorithm need be disclosed *only* when a general purpose microprocessor or computer is the *only* disclosed corresponding structure. In *Aristocrat*, a microprocessor was the only disclosed structure, and the holding in the case thus applies to that situation. However, neither *Aristocrat* nor any other case cited by Network-1 suggests that an algorithm is not also required to be disclosed when a general purpose microprocessor or computer is *part* of the disclosed corresponding structure. Indeed, for the reasons explained above, and based on the Court's reasoning in *Aristocrat*, it simply makes no sense to require disclosure of an algorithm only when a microprocessor or computer is the *only* disclosed corresponding structure. If a microprocessor is structure that corresponds to a means-plus-function clause, either alone or with additional structures, this structure will not perform a claimed function without an algorithm because a microprocessor without programming performs no function.

Network-1's argument that if the only disclosed structure were an A/D converter or a switch, either component alone would be sufficient to avoid purely functional claiming, is plainly flawed. Network-1 does not and cannot contend that the A/D converter and switch would be sufficient, without more, to perform the recited function of the "control means"; indisputably, the microprocessor, programmed to perform an algorithm, is necessary to direct the A/D converter and switch what to do and when. In other words, in the context of the '930 patent, the disclosure of the

---

[2] Network-1 does not contest Dr. Colwell's explanation that the microprocessor could be programmed to perform the claimed function of the "control means" in a number of different ways. (Colwell Decl. ¶ 83.)

[3] Network-1's related contention that the disclosure of the A/D converter and switch means the "control means" is not "implemented as a general purpose microprocessor" is simply wrong. Network-1 does not dispute that the microprocessor is involved in performing the recited function of the "control means." Therefore the "control means" *is* implemented as a general purpose microprocessor.

A/D converter and switch do not avoid the concern of functional claiming because neither operates independently of the microprocessor. Indeed, the '930 specification describes that the A/D converter is not separate structure ***but is part of the microprocessor unit itself*** ("[d]etector 22 includes an A/D converter and microprocessor control unit 24"). The specification further describes that the "control unit" operates "a detection circuit … with shunting switch 28," which is "internal software controlled." Col. 2:59-65. The disclosure of these structures as part of or as controlled by the microprocessor only serves to reinforce that the microprocessor is the heart of the "control means."[4]

Network-1's reliance on *Alcatel* and *Harris* to support its contention is misplaced. In *Alcatel*, the Court found the programming or algorithm associated with a processor to be part of the corresponding structure of a means-plus-function element when the processor was the only corresponding structure, and when it was only part of the corresponding structure. Network-1 focuses on the *Alcatel* Court's decision with respect to the "means for determining a specific address" element (*see* Network-1 Opp. at 7-8), but the Court's decision on that element does not support Network-1. The Court determined that the recited function for the element was "determining a specific address," and then found the specification disclosed two possible corresponding structures, both of which included a message processor 406. The first structure applied when a specific address was provided in a received data message, and the second structure applied when a generic address was provided in the received message. For the first structure, the Court found the message processor 406 determined the specific address "by ***reading*** the data or message," and that the corresponding structure was therefore "the message processor ***programmed to read the address from the message***." 2008 U.S. Dist. LEXIS 64351 at *49-51 (emphasis added). The first structure therefore included the message processor 406 as the only hardware structure, and the algorithm "***programmed to read*** the address from the message."

For the second structure, the Court found that "[t]o perform the function, message processor 406 ***transmits*** the data or message to locator module 408 associated with the mass memory 410. The locator module reads the specific address from a lookup table stored in the mass memory 410 and

---

[4] Network-1's heavy reliance *on S3, Inc. v. Nvidia Corp.*, 259 F.3d 1364 (Fed. Cir. 2001), and *Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205 (Fed. Cir. 2003), is misplaced. In neither case was a generic, programmable microprocessor or computer part of the structure corresponding to a means-plus-function element.

*provides* that address to message processor." The Court concluded that the corresponding structure was "message processor 406 *using* locator module 408 that uses a lookup table stored in mass memory 410." *Id*. at *51-52 (emphasis added). For the second structure, therefore, even though the message processor was only part of the corresponding hardware structure, the Court found the structure to include the algorithm of the message processor "using" the locator module to perform the claimed function.[5] The *Alcatel* decision therefore does not support Network-1's contention that no algorithm is required when a microprocessor is only part of the disclosed corresponding structure.

Similarly, the *Harris* Court specifically found that the corresponding structure for the recited "time domain processing means" was actually two separate processors – a "support processor," and a "fast array processor," each of which performed part of the recited function. 417 F.3d at 1254. Nevertheless, the Court found that the corresponding structure must include the complete "data recovery algorithm" which was carried out in part by each of the processors. *Id*. Thus, *Harris* also confirms that even when a processor is only part of the disclosed corresponding hardware structure for performing the claimed function, a disclosed algorithm for the processor must be included as part of the corresponding structure.

### B. The Specification Does Not Disclose A Two-Step "Comparing" Algorithm.

Network-1's contention (Network-1 Opp. at 9) that the person of ordinary skill in the art would understand the '930 patent to disclose a two-step algorithm, in which the first step is "comparing the voltage on the data signaling pair with a preselected condition," finds no support in the patent or in the law. Network-1 contends that Figure 1 of the '930 patent and the corresponding text at col. 2, lines 59-65 discloses its proposed algorithm, but Figure 1 is merely a schematic diagram that even named inventor Mr. Katzenberg admits does not disclose an algorithm, i.e., a series of steps, to accomplish the claimed function of the "control means." (*See* Defendants' Motion, Ex. 4 (excerpts from the deposition of Boris Katzenberg, taken May 12 and 13, 2009 at 396-98, 400, 403-04).)

---

[5] The recited function in *Alcatel*, i.e., "determining a specific address," required only a simple algorithm to perform, unlike the function at issue in this case, which requires making a powering decision in response to a preselected condition where the specification describes three different voltage conditions that can be detected and that signify different powering situations.

- 5 -

DEFENDANTS' REPLY RE PARTIAL SUMMARY
JUDGMENT OF INVALIDITY FOR INDEFINITENESS
Case No. 6:08-CV-030

The corresponding text of the '930 specification also does not disclose an algorithm. The text merely discloses an "A/D converter and microprocessor control unit 24, operating a detection circuit" and "an internal software controlled switch" 28. Col. 2:59-65. This cryptic disclosure merely identifies certain components. It does not describe any steps for the microprocessor to operate the detection circuit, let alone an algorithm or series of steps to carry out the recited function of the "control means." *Cf. Aristocrat*, 521 F.3d 1335 (rejecting argument that patent figures and related text were algorithms; "The figures, tables, and related discussion . . . are not algorithms. They are simply examples of the results of the operation of an unspecified algorithm."). At most, the specification describes components that *could be operated* on by a microprocessor using any number of different algorithms, but without disclosing any such algorithm

Network-1 and its technical expert Dr. Knox assert that the person of ordinary skill in the art would understand the '930 specification discloses a microprocessor that compares the voltage on the data signaling pair with a preselected condition and if they match closes switch 28. (Network-1 Opp. at 10; Knox Decl. ¶42.) But, Dr. Knox does not, and indeed cannot, point to any place in the specification that actually says the microprocessor "compares" the detected voltage to a preselected condition, or closes the switch in response to such a comparison. Indeed, Dr. Knox does not point to anything in the specification from which those steps can even be reasonably inferred. Instead, Network-1 and Dr. Knox invite the Court to do precisely what the Federal Circuit has again recently cautioned against: substituting what a person of ordinary skill *could* devise as a possible algorithm for a failure of *actual* disclosure in the specification. *See Biomedino, LLC v. Waters Technologies Corp.*, 490 F.3d 946, 953 (Fed. Cir. 2007) ("The inquiry is whether one of skill in the art would understand the specification itself to disclose a structure, not simply whether that person would be capable of implementing that structure.").[6] In so doing, Network-1 invites legal error by fundamentally confusing the definiteness requirement with the enablement requirement. *See Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009) (cautioning against

---

[6] Network-1 argues that the '930 patent discloses the proposed two-step algorithm at the level of detail required by the Federal Circuit, citing *Harris*, 417 F.3d at 1254. (Network-1 Opp. at 9.) However, in *Harris*, the Court found the specification specifically disclosed a two-step algorithm in the text and figures. *See* 417 F.3d at 1254-55. In stark contrast, the '930 patent provides *no* disclosure from which Network-1's proposed two-step algorithm can be even generalized.

DEFENDANTS' REPLY RE PARTIAL SUMMARY
JUDGMENT OF INVALIDITY FOR INDEFINITENESS
Case No. 6:08-CV-030

1  "conflate[ing] the definiteness requirement of section 112, paragraphs 2 and 6, and the enablement
2  requirement of section 112, paragraph 6"; "The fact that an ordinarily skilled artisan might be able to
3  design a program . . . goes to enablement. The question before us is whether the specification
4  contains a sufficiently precise description of the 'corresponding structure' to satisfy section 112,
5  paragraph 6, not whether a person of skill in the art could devise some means to carry out the recited
6  function.").

In fact, what the '930 specification *actually* discloses completely undermines Network-1's contention that the person of ordinary skill in the art would understand the '930 patent discloses a two-step algorithm in which the first step is simply to compare the detected voltage to a preselected condition. The '930 patent *actually* discloses that *three different* voltage conditions can be "determined" and that each "identify" whether or not a particular type of device is able to receive or not receive power. The first two, "fixed" and "no" voltage drops, identify different types of equipment that are defined as not being able to accept remote power. Only the last, a "varying" sawtooth voltage level, identifies a type of equipment that can accept remote power. (*See* Ex. 1, col. 3:2-19.) The three voltage condition description necessarily requires more than a simple comparison of *whatever* voltage condition is detected to a preselected condition to determine if a connected piece of equipment is able to receive remote power. It actually requires a more complex decision-making process which can differentiate between at least three different conditions and then decide whether to supply power based on that differentiation. (*See* Colwell Dec. ¶ 79.) If the '930 patent was intended to disclose a simple two-step comparison algorithm, it easily could have said that, but it does not. Contrary to Network-1's argument therefore, the '930 patent would not reasonably suggest to a person of ordinary skill in the art a simple two-step "comparing" algorithm, but rather a more complex algorithm, which it does not disclose. (*See* Colwell Dec. ¶¶ 79, 81.)

Network-1 deceptively twists Dr. Colwell's declaration in an attempt to support its two-step algorithm contention. (Network-1 Opp. at 10.) Contrary to Network-1's characterization, however, Dr. Colwell did not opine that the person of ordinary skill in the art would understand the '930 specification *discloses* a two-step algorithm. Rather, Dr. Colwell explained that a person of ordinary skill in the art would understand that the microprocessor would need to implement an algorithm to

determine if the detected voltage matches a preselected condition and based on that determination take the necessary action to control power. (Colwell Dec. ¶76.) That is very different from saying that the specification discloses a two-step algorithm, or any algorithm. Indeed, Dr. Colwell further explained that the '930 patent does ***not*** disclose any algorithm, let alone a two-step algorithm (Colwell Dec. ¶¶ 73-74, 77-78, 81, 83), and that in fact many algorithms are possible. (Colwell Dec. ¶¶ 79, 83.)

Finally, Network-1 misstates this Court's claim construction of "control means" in the *D-Link* case. Network-1 argues that the Court did not require an algorithm for the "control means" in the *D-Link* case and alleges that the Court recognized the "control means" performs a two-step algorithm. (Network-1 Opp. at 10.) This argument is erroneous for at least three reasons. *First*, the Court did not consider in *D-Link* whether an algorithm was part of the required structure of the "control means" because neither party suggested or even raised that issue. That is perhaps not too surprising given that the Federal Circuit did not issue the decisions in *Aristocrat*, *Net MoneyIN*, or *Blackboard* until after the Court had already issued its claim construction. In any event, the parties' failure to point out the lack of any algorithm in *D-Link* plainly does not bind the defendants in this case.

*Second*, the Court in *D-Link* did not even consider let alone decide whether the '930 specification discloses a two-step algorithm as Network-1 argues, or indeed any algorithm. In the section of the Court's claim construction decision that Network-1 quotes, the Court found that "A/D converter and microprocessor 24 activate switch 28 to the closed position ***when a preselected condition of the voltage level is detected and therefore is responsive to that condition***" (emphasis added). The Court's statement is not a recognition that the specification discloses a two-step "comparing" algorithm, or any algorithm, but merely a restatement of the "control means" function recited in the claim: "to control power … in response to a preselected condition of said voltage level." The Federal Circuit has made clear that simply restating the claimed function in the specification does not substitute for disclosing an algorithm to carry out the function, or save a claim from a finding of indefiniteness, and so it is highly doubtful that is what the Court did in *D-Link*.

1  *See Aristocrat*, 521 F.3d at 1334 (language in the specification that "simply describes the function to
2  be performed" does not suffice as an algorithm); *Blackboard*, 574 F.3d at 1384 (same).

3  *Third*, in *D-Link*, the Court did not consider the three-voltage-state disclosure of the '930
4  specification, as it would have if it were determining whether the '930 patent discloses an algorithm
5  and, if so, what it is. Taking that description into account, the Court has a compelling reason to
6  conclude that no person of ordinary skill in the art could reasonably determine the '930 patent
7  discloses Network-1's simple two-step "comparing" algorithm.

### C. Even With A Two-Step "Comparing" Algorithm, Claim 1 Is Indefinite.

If it is found that the '930 patent discloses Network-1's proposed two-step algorithm, then the "comparing" step constitutes a substantive limitation of claim 1, which must be considered in determining the claim's scope. *See Aristocrat*, 521 F.3d at 1331 ("The scope of that [means-plus-function] claim limitation had to be defined by the structure disclosed in the specification plus any equivalents of that structure"); *Budde v. Harley-Davidson*, Inc., 250 F.3d 1369, 1376 (Fed. Cir. 2001) ("It is not until the structure corresponding to the claimed function in a means-plus-function limitation is identified and considered that the scope of coverage of the limitation can be measured."). However, the scope of claim 1 cannot be determined because the '930 patent provides no guidance as to what it means to "compare" the detected voltage condition and preselected condition. Network-1 does not point to any explanation, and does not dispute Dr. Colwell's explanation that "comparing" can mean many different things to the person of ordinary skill in the art. (Colwell Dec. ¶ 83) In the absence of any guidance or explanation in the '930 patent to the meaning of "compare," the scope of claim 1 remains indefinite. *See Union Pacific Resources Company v. Chesapeake Energy Corporation*, 236 F.3d 684, 691-92 (Fed. Cir. 2001) (finding under very analogous facts that a claim element "comparing" two sets of characterizing data was indefinite where the specification provided no explanation of the mathematical manipulation required to compare the data, and where "comparing" could have other meanings to a person of ordinary skill in the art).

### D. In Failing To Identify A Power Source, Claim 9 Is Indefinite.

Network-1's opposition is based on the premise that one of ordinary skill in the art would easily understand claim 9, and claim 6 from which it depends. As evidence, Network-1 cites the declaration of Dr. Knox, who states that "[t]he claim language is clear: the 'voltage level on the data signaling pair,' which is sensed in claim 6, is the voltage that continues to be sensed in dependent claim 9.'" (Knox Dec. ¶ 39 - 41.) A dependent claim "must be interpreted to encompass each of its own elements as well as any additional elements recited in the referenced claim." *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 1999 U.S. Dist. LEXIS 6990 (D. Conn. 1999), aff'd, 205 F.3d 1377, 54 USPQ2d 1086 (Fed. Cir. 2000). Claim 6 establishes two power sources, a main and secondary power source, but Network-1 fails to demonstrate how Claim 9 establishes which of these serves as the source for the sensed voltage.

Network-1 states it cannot identify a power source because this limitation is absent from claim 9. But in failing to incorporate a power source limitation into claim 9, the claim fails to "particularly point out and distinctly claim the subject matter which the patentee regards as his invention." *Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1378 (Fed. Cir. 1999).

## III. CONCLUSION

Defendants respectfully request that this Court enter judgment declaring claims 1, 2, and 9 of the '930 patent invalid as indefinite under 35 U.S.C. § 112, ¶ 2.

Dated: November 20, 2009

Respectfully submitted,

/s/ Eric H. Findlay
Eric H. Findlay (SBN 00789886)
Findlay Craft, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com

Of Counsel:

William F. Lee – Lead Attorney
(Massachusetts SBN 291960)
(admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
william.lee@wilmerhale.com

Mark Selwyn (California SBN 244180)
(admitted *pro hac vice*)
William J. Bohler (California SBN 141970)
(admitted *pro hac vice*)
Niki Z. Moore (California SBN 244968)
(admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1117 California Avenue
Palo Alto, California 94304
Tel: (650) 858-6000
Fax: (650) 858-6100
mark.selwyn@wilmerhale.com
william.bohler@wilmerhale.com
niki.moore@wilmerhale.com

**ATTORNEYS FOR DEFENDANTS
CISCO SYSTEMS, INC. AND CISCO-
LINKSYS, LLC**

William Cornelius (SBN 04834700)
WILSON, ROBERTSON &
CORNELIUS, P.C.
P.O. Box 7339
Tyler, Texas 75711-7339
Tel: (903) 509-5000
Fax: (903) 509-5091
wc@wilsonlawfirm.com

Richard C. Vasquez (California SBN 127228)
(admitted pro hac vice)
Jeffrey T. Lindgren (California SBN 176400)
(admitted pro hac vice)
Craig E. Davis (California SBN 221356)
(admitted pro hac vice)
VASQUEZ BENISEK &
LINDGREN LLP
3685 Mt. Diablo Blvd, Suite 300
Lafayette, CA 94549
Tel: (925) 627-4250
Fax: (925) 403-0900
rvasquez@vbllaw.com
jlindgren@vbllaw.com
cdavis@vbllaw.com

**ATTORNEYS FOR DEFENDANT
ENTERASYS NETWORKS, INC.**

| | |
|---|---|
| Henry C. Bunsow (California SBN 60707)<br>K.T. Cherian (California SBN 133967)<br>Constance F. Ramos (California SBN 203637)<br>John D. Hamann (Georgia SBN 320109)<br>Subroto Bose (California SBN 230339)<br>HOWREY LLP<br>525 Market Street, Suite 3600<br>San Francisco, California 94105<br>Tel: (415) 848-4900<br>Fax: (415) 848-4999<br>bunsowh@howrey.com<br>cheriank@howrey.com<br>ramosc@howrey.com<br>hamannj@howrey.com<br>boses@howrey.com<br><br>**ATTORNEYS FOR DEFENDANT FOUNDRY NETWORKS, INC.** | Melvin R. Wilcox, III (SBN 21454800)<br>YARBROUGH WILCOX, PLLC<br>100 E. Ferguson St., Suite 1015<br>Tyler, Texas 75702<br>Tel: (903) 595-1133<br>Fax: (903) 595-0191<br>mrw@yw-lawfirm.com<br><br>Jeffrey E. Ostrow (California SBN 213118 )<br>(admitted pro hac vice)<br>SIMPSON THACHER & BARTLETT LLP<br>2550 Hanover Street<br>Palo Alto, CA 94304<br>Tel: (650) 251-5000<br>Fax: (650) 251-5002<br>jostrow@sbtlaw.com<br><br>**ATTORNEYS FOR DEFENDANT 3COM CORPORATION** |
| David D. Bahler – Lead Attorney (SBN 01513100)<br>Gilbert A. Greene (SBN 24045976)<br>FULBRIGHT & JAWORSKI LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX 78701<br>Tel: (512) 474-5201<br>Fax: (512) 536-4598<br>dbahler@fulbright.com<br>ggreene@fulbright.com<br><br>**ATTORNEYS FOR DEFENDANT ADTRAN, INC.** | Kenneth R. Adamo (SBN 00846960)<br>Lead Attorney<br>JONES DAY<br>2727 North Harwood Street<br>Dallas, TX 75201-1515<br>Tel: (214) 220-3939<br>Fax: (214) 969-5100<br>kradamo@jonesday.com<br><br>Behrooz Shariati (California SBN 174436)<br>Eric Cha (California SBN 204538)<br>(admitted pro hac vice)<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, CA 94303<br>Tel: (650) 739-3939<br>bshariati@jonesday.com<br>echa@jonesday.com<br><br>**ATTORNEYS FOR DEFENDANT EXTREME NETWORKS, INC.** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 20, 2009. Any other counsel of record will be served by facsimile or first class mail.

/s/ Eric H. Findlay
Eric H. Findlay