# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 SECURITY SOLUTIONS, INC., a Delaware corporation, | § § § | |
| Plaintiff, | § § | |
| v. | § § | NO. 6:08-CV-30-LED |
| CISCO SYSTEMS, INC., a California corporation; CISCO-LINKSYS, L.L.C., a California Limited Liability Company; ADTRAN, INC., a Delaware corporation; ENTERASYS NETWORKS, INC., a Delaware corporation; EXTREME NETWORKS, INC., a Delaware corporation; FOUNDRY NETWORKS, INC., a Delaware corporation; NETGEAR, INC., a Delaware corporation; 3COM CORPORATION, a Delaware corporation; | § § § § § § § § § § § § § | |
| Defendants. | § | |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF
NETWORK-1 SECURITY SOLUTIONS, INC.'S MOTION TO COMPEL**

**INTRODUCTION**

Network-1's motion to compel should be denied for two primary reasons. *First*, Network-1 improperly seeks to use a contention interrogatory to obtain early expert opinions regarding non-infringement to which it is not yet entitled. Cases from this District have made clear that defendants need not respond to such an interrogatory until after the court has issued its *Markman* ruling and/or the deadline for rebuttal expert reports. *Second*, the basis for non-infringement contentions is not a proper subject for a 30(b)(6) deposition. Network-1's 30(b)(6) deposition topics plainly would require a corporate designee to compare claim terms that have yet to be construed by the Court to the accused products, and would impinge upon

communications protected by the attorney-client and work product privileges.  For these and other reasons, case law in this District and elsewhere recognizes that Fed. R. Civ. P. 30(b)(6) is not a proper vehicle to obtain discovery regarding legal contentions in a complex patent case.

As a compromise, the defendants have proposed to Network-1 that they would provide an interrogatory response now – *i.e.*, before the Court has issued its *Markman* ruling and before rebuttal expert reports are due – that identifies each and every claim limitation that they contend is missing from the asserted claims.  This is more than the courts required in either *Jacobs Chuck Manufacturing Co. v. Shandong Weida Machinery*, No. 2:05-CV-185, Docket No. 90 (E.D. Tex. Aug. 18, 2006) (attached hereto as Ex. A), or, more recently, in *Cummins-Allison Corp. v. SBM Co.*, No. 9:07-CV-196, 2009 WL 806753 (E.D. Tex. Mar. 19, 2009).  In the latter case, Judge Clark made clear that a rebuttal expert report, <u>not</u> an interrogatory response, is where defendants should disclose their crystallized non-infringement arguments.  The defendants have also made clear to Network-1 that they are willing to make available 30(b)(6) witnesses now to testify regarding the design, structure, and operation of the accused products as they relate to the relevant Power over Ethernet functionality.  Network-1 rejected the defendants' proposal, and filed its motion.

## FACTUAL BACKGROUND

Approximately a year ago, each side in this case served certain contention interrogatories on the other.  On November 4, 2008, Network-1 served an interrogatory asking each defendant to describe "in specific detail each fact, argument, inference, and document" that supports its non-infringement contentions.  (*See* Ex. 1 to Network-1's Motion [Common Interrogatory No. 1], at 3-4. 9-10, 16-17, 28-29, 32-33, 41-42, 48.)  On December 4, 2008, the defendants served several contention interrogatories of their own on Network-1, one of which asked Network-1 to describe

the basis for any contention that any statement in Defendants' Invalidity Contentions (served pursuant to Patent Local Rule 3-3) was incorrect. (*See* Ex. B attached hereto [Network-1's Answers and Objections to Defendants' First Set of Interrogatories], at 6.) Both sides objected to the other's interrogatories on essentially the same grounds, including citation to Judge Ward's decision in *Jacobs Chuck Manufacturing Co. v. Shandong Weida Machinery*, No. 2:05-CV-185, Docket No. 90 (E.D. Tex. Aug. 18, 2006). Network-1 specifically objected to the interrogatory regarding patent validity "as being a premature contention interrogatory and as seeking expert opinions in advance of the court ordered deadlines for claim construction and expert discovery." (*Id.*)

Network-1 still objects to answering the defendants' contention interrogatory on the grounds that it is premature, yet it now insists that the defendants must answer its interrogatory seeking non-infringement contentions. As a compromise, the defendants have offered to disclose which elements from the asserted claims they contend are not met by the accused products. (*See* Ex. 3 to Network-1's Motion [Nov. 9, 2009 e-mail to counsel for Network-1], at 1-2.) Network-1 has rejected this compromise offer.

In addition, Network-1 has recently served notices pursuant to Federal Rule of Civil Procedure 30(b)(6) seeking corporate testimony regarding, among other things, the basis for the defendants' non-infringement contentions. (*See* Ex. 2 to Network-1's Motion.) The defendants objected to these topics as they would require a 30(b)(6) designee to interpret disputed claim terms, including means-plus-function limitations, and compare the claim language to the accused products. (*See id.*) For instance, Network-1's Topic No. 3 requests the following information, with disputed claim terms underlined and bolded for the Court's reference:

> The detailed identification of all facts and documents that address whether [the defendant]'s Power Sourcing Equipment, used in

- 3 -

US1DOCS 7371185v1

connection with a Powered Device, include each part of each of the following elements from claim 1 of the '930 Patent:

a. "***a data node*** adapted for data switching"

b. "***an access device*** adapted for data transmission"

c. "***at least one data signaling pair connected between the data node and the access device and arranged to transmit data therebetween***"

d. "***a main power source*** connected to supply power to the ***data node***"

e. "***a secondary power source*** arranged to supply power from the ***data node*** via said data signaling pair to the ***access device***"

f. "***sensing means for delivering a low level current*** from said ***main power source*** to the ***access device*** over said data signaling pair and sensing a resulting voltage level thereon"

g. "***control means*** responsive to said voltage level and adapted ***to control power supplied by said secondary power source to said access device*** in response to a ***preselected condition*** of said voltage level."

(*See id.* at 3-4, 6-7, 18-19, 27-28, 36-37) While the defendants objected to producing 30(b)(6) witnesses to interpret claim terms and compare them to the accused products, the defendants agreed to make available one or more 30(b)(6) witnesses to testify regarding the design, structure, and operation of the accused products as they relate to Power over Ethernet functionality, and Adtran, Inc., the only defendant from which 30(b)(6) testimony has been taken, permitted unfettered questioning regarding such topics.

## ARGUMENT

**I.  NETWORK-1'S INTERROGATORY SEEKING DEFENDANTS' NON-INFRINGEMENT CONTENTIONS IS PREMATURE.**

Courts in this District have rejected attempts to force accused infringers to provide non-infringement contentions before a *Markman* ruling and before rebuttal expert reports are due. In *Cummins-Allison Corp.*, Judge Clark recently addressed this very issue regarding the appropriate

time to provide non-infringement contentions. In that case, the plaintiff complained that the defendants had failed to fully disclose their non-infringement positions in their initial interrogatory responses, and argued that they should be precluded from relying on more detailed supplemental responses served one day after they served two rebuttal expert reports on the issue of non-infringement. *Id.* at *1. Judge Clark flatly rejected plaintiff's assertion, and ruled that the timing of defendants' responses to plaintiff's contention interrogatory was proper:

> Plaintiffs bear the burden to prove infringement. The purpose of interrogatories is not to require Defendants to divulge their crystallized non-infringement arguments upon which they will rely at trial. The deadline for Defendants' rebuttal expert reports on non-infringement serves this purpose. Defendants proceeded in a proper manner and supplemented their answers to interrogatories as required by the Federal Rules of Civil Procedure.

*Id.* at *2.

Similarly, in *Jacobs Chuck Manufacturing Co. v. Shandong Weida Machinery*, No. 2:05-CV-185, Docket No. 90 (E.D. Tex. Aug. 18, 2006), Judge Ward held that a contention interrogatory like that in dispute here is premature at least until the court issues its claim construction opinion: "A requirement that a party provide contentions of this sort early in the litigation is in tension with the established time frames for declaring claim construction positions provided by the Patent Rules." Slip op. at 1. In addition, Judge Ward, like Judge Clark in *Cummins-Allison*, related the timing of responses to contention interrogatories to claim construction and expert reports: "The court defers expert reports until after the issuance of the claim construction opinion in part because the court believes that it benefits the experts to know the scope of the claims before they render their opinions. Deferral of the obligation to answer this type of contention interrogatory is also appropriate." *Id.* at 2.

Belying the position taken in its motion, Network-1 has relied on Judge Ward's decision in *Jacobs Chuck Manufacturing* to resist responding to defendants' interrogatory, served on

- 5 -

December 4, 2008, seeking the basis for Network-1's contentions with respect to patent validity. (*See* Ex. A, at 6.) Specifically, Network-1 lodged the following objection, on which it still stands today: "Network-1 objects to this interrogatory as being a premature contention interrogatory and as seeking expert opinions in advance of the court ordered deadlines for claim construction and expert discovery." *Id.* Needless to say, Network-1 should not be permitted to have it both ways.

Notwithstanding the *Cummins-Allison* and *Jacobs Chuck Manufacturing* decisions, which demonstrate that Network-1's interrogatory seeking the defendants' non-infringement contentions is premature, the defendants proposed a reasonable middle ground to address Network-1's purported concern that it would ultimately be surprised by the defendants' non-infringement contentions. Specifically, the defendants proposed that they would identify each claim limitation that they contend the accused products do not meet, literally and/or under the doctrine of equivalents. (*See* Ex. 3 to Network-1's Motion [Nov. 9, 2009 e-mail to counsel for Network-1], at 2-3.) This is the same procedure that the court required in *Overture Services, Inc. v. Google Inc.*, No. C-02-1991, Docket No. 108 (N.D. Cal. Jan. 8, 2004) (attached hereto as Ex. C), in which the patentee demanded that the accused infringer provide detailed non-infringement contentions in response to the same type of interrogatory that Network-1 has served here. In that case, the court ruled "[s]uch a sweeping contention interrogatory" to be "premature" given the lack of any *Markman* ruling. Slip op. at 4. In issuing its ruling, the court reasoned:

> [to the extent the interrogatory] seeks more detailed information, including all the facts and theories behind Google's contention of non-infringement, the balance weighs against an early response. The facts and theories in support of the contention of non-infringement are not yet well developed. While Overture points out that Google can amend its responses, that process would be inefficient and does little to narrow the issues now when any response will almost certainly have to be amended later.

- 6 -

*Id.* Instead, the court required, as the defendants have offered here, that the defendants identify any allegedly missing claim limitations as this information "could narrow the issues in dispute" and would not be "disproportionately burdensome." *Id.*

The only authority that Network-1 cites in support of its argument with respect to the disputed contention interrogatory is Magistrate Judge Love's Order in *Performance Pricing, Inc. v. Google, Inc.*, Case No. 2:07-CV-00432 (Docket No. 194) (E.D. Tex. May 27, 2009). As an initial matter, that case cannot be squared with the position that Network-1 has taken in response to the defendants' contention interrogatory regarding validity (*i.e.*, that such a contention interrogatory is premature under *Jacobs Chuck Manufacturing*), or indeed with the position that Network-1 takes in its motion. Network-1 argues that the defendants should be "locked into" their non-infringement contentions now, and should have no ability to amend or change their non-infringement contentions later. (Network-1's Motion at 7.) Network-1's position was rejected by the court in *Performance Pricing*: "Defendant shall answer to the best of its ability with facts now known, and as litigation moves forward, <u>Defendant may amend or supplement this response as necessary pursuant to both the local and federal rules</u>." (Emphasis added.) Network-1's position is also plainly inconsistent with Federal Rule of Civil Procedure 26(e), which allows (indeed requires) supplementation of discovery responses. Second, in *Performance Pricing*, the defendants did not raise, and the court did not consider, the *Cummins-Allison* decision, which reinforces that rebuttal expert reports on non-infringement are the proper vehicle for the disclosures that Network-1 seeks by way of a contention interrogatory. Third, there is no indication in *Performance Pricing* that the plaintiff was seeking to impose on the defendant a standard it was unwilling to apply to itself, as Network-1 is doing here.

US1DOCS 7371185v1

Finally, Network-1's claim that it has an urgent need for a response to its contention interrogatory is specious at best considering that Network-1 has waited nearly a year to raise its concern with either the defendants or the Court. Network-1 served its interrogatory on November 4, 2008, and the defendants timely responded on January 15, 2009, more than eleven months ago. Network-1 provides no explanation why, on the eve of the December 3 *Markman* hearing, more than a year into fact discovery, and less than two months from the start of expert discovery, it is suddenly in critical need of the defendants' non-infringement contentions.

II.  **FEDERAL RULE CIVIL PROCEDURE 30(B)(6) IS NOT A PROPER VEHICLE FOR NETWORK-1 TO OBTAIN DISCOVERY REGARDING THE BASIS FOR DEFENDANTS' NON-INFRINGEMENT CONTENTIONS.**

In a complex patent case, depositions pursuant to Fed. R. Civ. P. 30(b)(6) are generally not considered to be a proper vehicle for obtaining discovery regarding the bases for legal contentions of the parties, such as infringement/non-infringement, validity/invalidity, or claim construction. For example, in the well-known patent case of *McCormick-Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 (N.D. Cal. 1991), the court granted a protective order prohibiting a party "from using depositions taken under the authority of Federal Rule of Civil Procedure 30(b)(6) for the purpose of detailing the bases of the contentions made and the positions taken," *id.* at 285, as Network-1 seeks to do here.

The *McCormick-Morgan* court determined that, in a complex patent case, "no one human being can be expected to set forth, especially orally in deposition, a fully reliable and sufficiently complete account of all the bases for the contentions made and positions taken by a party." *Id.* at 286. The court further recognized that a non-lawyer cannot reasonably be expected to undertake the task of explaining a party's contentions:

> In a patent case like this, the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident. In other words, to set forth the bases for

contentions in this case, it is not enough to describe real world facts and events, even in considerable detail. Rather, determining what the bases for contentions are in this environment involves complex judgments about the relationship between at least three kinds of things: (1) evidence/facts/events in the real world (outside litigation), (2) "claims" as particularly set forth in the patent in issue and in other patents or other material presented to the patent office, and (3) principles of intellectual property law set forth in statutes and in judicial opinions. A non-lawyer deponent might have great knowledge about the products in issue here, but be quite ill-equipped to reason reliably about the legal implications of the relationship between those products, or their components, and the various claims of the patent in suit or of other patents or prior art.

*Id.* at 286-87. The court also emphasized the critical role that claim language plays in a patent case, and the unfairness of requiring a non-lawyer, before discovery is even complete, to articulate fully the bases for a party's contentions:

Patent cases turn peculiarly on a conceptually dense dynamic between physical objects, words in claims, and principles of law. Understanding that dynamic, and describing the relationships that serve as the bases for a given parties' contentions, is something best done after at least most other discovery has been completed. After all, in cases like these, a substantial part of "the bases for contentions" really consists of *quasi-legal argument*.

*Id.* at 287 (emphasis in original). The *McCormick-Morgan* decision has been followed by several courts.[1] To the defendants' knowledge, no court has ever disagreed with the foregoing discussion in the *McCormick-Morgan* decision.

Similarly, in *Datatreasury Corp. v. Wells Fargo & Co.*, Civil Action No. 2:06-CV-72, Docket No. 1618 (E.D. Tex. Nov. 23, 2009) (attached hereto as Ex. D), issued earlier this week, Judge Folsom denied a motion to compel 30(b)(6) testimony on topics related to infringement contentions, such as the "factual basis" for whether the accused products included various claim

---

[1] *See, e.g., Goss Int'l Americas, Inc. v. Man Roland, Inc.*, No. 03-CV-513, 2006 WL 1134390, at *1 (D.N.H. Apr. 28, 2006) (denying motion to compel a 30(b)(6) witness to answer claim construction related questions; "claim construction is a question of law, and legal contentions are not a proper subject for factual discovery"); *Smithkline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *3 (denying motion to compel party to produce 30(b)(6) witness to state legal positions and contentions with respect to statements in patents an the bases for non-infringement positions; "It would be very difficult for a non-attorney to answer such questions at a deposition.").

- 9 -

limitations. Judge Folsom found, as the defendants suggest here, that "expert reports and expert discovery are a more proper vehicle for discovery on the topics at issue." Slip op. at 6.

The defendants have no objection to each making available one or more witnesses to testify regarding the numerous 30(b)(6) topics that seek information regarding the design, operation, and structure of the accused products as they relate to the relevant Power over Ethernet functionality, and Adtran, Inc., the only defendant from which 30(b)(6) testimony has been taken, has done just that. These are, in the words of Fed. R. Civ. P. 30(b)(6), "matters known or reasonably available to the organization," they do not require an interpretation of claim language, and they do not call for attorney-client or work product privileged information.

However, the 30(b)(6) topics in dispute unquestionably would require a witness not merely to explain how the accused products operate (a traditional subject for a 30(b)(6) deposition in a patent case to which the defendants do not object), but to determine the meaning of the patent claim language and then to compare the claim language to the accused products. The first 30(b)(6) topic in dispute reads: "The basis for your contention that you have not and do not infringe claims 1, 2, 6, or 9 of the '930 Patent." (*See* Ex. 2 to Network-1's Motion, at 7, 14, 23, 32, and 36.) The other 30(b)(6) topics in dispute likewise purport to require a witness to identify "all facts and documents" that address whether the accused products include each part of each element of the asserted claims. (*See id.* at 4-5, 9-10, 18-19, 27-28, 36-37.) The noticed topics in dispute, then, would necessarily require a witness not merely to explain how the accused products operate, but to provide legal basis that support defendants' contentions that the accused products do not infringe. Fundamentally, these topics relate to contentions that require claim construction. *See Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004) ("Determination of patent infringement requires a two-step analysis: (1) the scope of the claims

must be construed; and (2) the allegedly infringing device must be compared to the construed claims.").

The sole authority that Network-1 cites in support of its claimed entitlement to 30(b)(6) testimony on the disputed topics is, again, *Performance Pricing*. In *Performance Pricing*, the court rejected Google's argument asserted under Patent Local Rule 2-5 that seeking non-infringement contentions prior to a *Markman* ruling was premature. But defendants do not rely on Patent Local Rule 2-5 as the basis for opposing Network-1 deposition topics, but assert that they are improper under the reasoning in *McCormick-Morgan* and similar cases, as well as the attorney-client privilege and the work-product doctrine. The defendants respectfully suggest that the rule set forth in *McCormick-Morgan* is correct, reflects the practice widely followed in patent litigation, and should be adopted here.

Network-1 defends its 30(b)(6) topics by suggesting that none of them "ask Defendants to produce a witness to testify on the meaning of claim language as Defendants' objections presume." (Network-1's Motion at 11.) But, indisputably, these topics cannot be meaningfully addressed unless the witness knows the meaning of the claim language, and is prepared to compare the claim language to the accused products. Similarly, Network-1 professes that it is not seeking the "advice, opinions, or work product" of defendants' counsel or any communications between defendants and their counsel, but instead merely the "factual basis" for non-infringement contentions. (*Id.* at 8-9.) But that too is overly simplistic. The "factual basis" requires an interpretation of the claims and an application of the claims to the accused products. The organizational awareness of this information stems from the advice, opinions, and work product communicated by counsel to client. As *McCormick-Morgan* holds, no non-lawyer can reasonably be expected to testify fully on these legal issues without communication with counsel.

- 11 -

Network-1's noticed topics infringe on the defendants' privileges protecting against disclosure, and are objectionable. Network-1 also suggests that it is entitled to a 30(b)(6) witness on the disputed topics because it should not need to wait until a *Markman* ruling to learn the basis for the defendants' non-infringement contentions. Even if that is true, it in no way follows that Network-1 is entitled to obtain this discovery through a 30(b)(6) deposition. The proper vehicle, as the defendants have proposed but Network-1 has rejected, is through an interrogatory response that identifies the specific limitations that are not met, as the court required in *Overture Services, Inc. v. Google Inc.*, No. C-02-1991, Docket No. 108 (N.D. Cal. Jan. 8, 2004), as explained in detail above.

## **CONCLUSION**

For the foregoing reasons, the defendants respectfully request that Network-1's motion be denied.

Dated: November 25, 2009                                          Respectfully submitted,

/s/ Eric H. Findlay
Eric Findlay (SBN 00789886)
Findlay Craft, LLP
6760 Old Jacksonville Hwy, Suite 101
Tyler, TX 75703
Tel: (903) 534-1100
Fax: (903) 534-1137
efindlay@findlaycraft.com

Of Counsel:

William F. Lee – Lead Attorney
(Massachusetts SBN 291960)
(admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
william.lee@wilmerhale.com

William Cornelius (SBN 04834700)
WILSON, ROBERTSON &
CORNELIUS, P.C.
P.O. Box 7339
Tyler, Texas 75711-7339
Tel: (903) 509-5000
Fax: (903) 509-5091
wc@wilsonlawfirm.com

US1DOCS 7371185v1

Mark Selwyn (California SBN 244180)
(admitted *pro hac vice*)
William J. Bohler (California SBN 141970)
(admitted *pro hac vice*)
Niki Z. Moore (California SBN 244968)
(admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
1117 California Avenue
Palo Alto, California 94304
Tel:  (650) 858-6000
Fax:  (650) 858-6100
mark.selwyn@wilmerhale.com
william.bohler@wilmerhale.com
niki.moore@wilmerhale.com

**ATTORNEYS FOR CISCO SYSTEMS, INC. AND CISCO-LINKSYS, LLC**

Henry C. Bunsow (California SBN 60707)
K.T. Cherian (California SBN 133967)
Constance F. Ramos (California SBN 203637)
John D. Hamann (Georgia SBN 320109)
Subroto Bose (California SBN 230339)
HOWREY LLP
525 Market Street, Suite 3600
San Francisco, California 94105
Tel: (415) 848-4900
Fax: (415) 848-4999
bunsowh@howrey.com
cheriank@howrey.com
ramosc@howrey.com
hamannj@howrey.com
boses@howrey.com

**ATTORNEYS FOR DEFENDANT AND COUNTERCLAIMANT FOUNDRY NETWORKS, INC.**

Richard C. Vasquez (California SBN 127228)
(admitted pro hac vice)
Jeffrey T. Lindgren (California SBN 176400)
(admitted pro hac vice)
Craig E. Davis (California SBN 221356)
(admitted pro hac vice)
VASQUEZ BENISEK & LINDGREN LLP
3685 Mt. Diablo Blvd, Suite 300
Lafayette, CA 94549
Tel:  (925) 627-4250
Fax:  (925) 403-0900
rvasquez@vbllaw.com
jlindgren@vbllaw.com
cdavis@vbllaw.com

**ATTORNEYS FOR DEFENDANT ENTERASYS NETWORKS, INC.**

Melvin R. Wilcox, III (SBN 21454800)
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Tel:  (903) 595-1133
Fax:  (903) 595-0191
mrw@yw-lawfirm.com

Jeffrey E. Ostrow (California SBN 213118 )
(admitted pro hac vice)
SIMPSON THACHER & BARTLETT LLP
2550 Hanover Street
Palo Alto, CA  94304
Tel:  (650) 251-5000
Fax:  (650) 251-5002
jostrow@sbtlaw.com

**ATTORNEYS FOR DEFENDANT 3COM CORPORATION**

| | |
|---|---|
| David D. Bahler – Lead Attorney<br>(SBN 01513100)<br>Gilbert A. Greene (SBN 24045976)<br>FULBRIGHT & JAWORSKI LLP<br>600 Congress Avenue, Suite 2400<br>Austin, TX  78701<br>Tel:  (512) 474-5201<br>Fax:  (512) 536-4598<br>dbahler@fulbright.com<br>ggreene@fulbright.com<br><br>**COUNSEL FOR DEFENDANT ADTRAN, INC.** | Kenneth R. Adamo (SBN 00846960)<br>Lead Attorney<br>JONES DAY<br>2727 North Harwood Street<br>Dallas, TX  75201-1515<br>Tel:  (214) 220-3939<br>Fax:  (214) 969-5100<br>kradamo@jonesday.com<br><br>Behrooz Shariati (California SBN 174436)<br>Eric Cha (California SBN 204538)<br>(admitted pro hac vice)<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, CA  94303<br>Tel:  (650) 739-3939<br>bshariati@jonesday.com<br>echa@jonesday.com<br><br>**ATTORNEYS FOR DEFENDANT EXTREME NETWORKS, INC.** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 25, 2009. Any other counsel of record will be served by facsimile or first class mail.

/s/ Eric Findlay

Eric Findlay