IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| NETWORK-1 SECURITY SOLUTIONS, INC. | § § § | |
| Plaintiff, | § § | CASE NO. 6:08CV30 |
| vs. | § § | |
| CISCO SYSTEMS, INC., ET AL | § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Network-1's Motion for Reconsideration of Claim Construction Order (Docket No. 258). Having considered the parties' written submissions, the Court **DENIES** the motion.

## BACKGROUND

On February 2, 2008, Network-1 Security Solutions, Inc. ("Network-1") brought suit against Defendants alleging infringement of U.S. Patent No. 6,218,930 (the "'930 Patent"). The '930 Patent relates to an apparatus and method for remotely powering access equipment over a 10/100 switched Ethernet network. The Court held a *Markman* Hearing and construed the disputed terms of the '930 Patent in a Memorandum Opinion and Order. Network-1 moves the Court to reconsider two of its constructions.

## APPLICABLE LAW

The Federal Rules of Civil Procedure do not expressly recognize motions for reconsideration. *St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997). However, the

Court has authority to consider such motions using the guidelines of Rule 59(e). *Hamilton v. Williams*, 147 F.3d 367, 379 n.10 (5th Cir. 1998). To succeed on a motion for reconsideration, a party must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005). "[S]uch a motion is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. Hydrochem, Inc.*, 367 F.3d 473, 479 (5th Cir. 2004).

## ANALYSIS

Network-1 asserts that the Court applied different and conflicting standards for when the patentee has demonstrated a clear intention to limit the claim scope based on the disclosure contained in the specification. For the term "main power source," Network-1 accuses the Court of using a standard where the claims must be limited to the only embodiment in the specification. For the term "data node," Network-1 accuses the Court of using a standard where the claims must be limited when the patent describes the limitation as a feature of the present invention as determined from the invention's general objective.

"'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In interpreting claim language, the claims "'must be read in view of the specification, of which they are a part,'" but generally limitations should not be read from the specification into the claims. *Id.* at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (en banc)); *id.* at 1323. Using the specification to interpret the claims and importing limitations from

the specification into the claims can be a difficult distinction to apply in practice. *Id*. at 1323. Much of the time, reading the specification in the context of a teaching tool for one of ordinary skill in the art to make and use the invention will make it clear "whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and embodiments in the specification to be strictly coextensive." *Id.* The prosecution history and prior art may also shed light on whether the limitation is coextensive with claim scope. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326–27 (Fed. Cir. 2002) ("Whether an invention is fairly claimed more broadly than the 'preferred embodiment' in the specification is a question specific to the content of the specification, the context in which the embodiment is described, the prosecution history, and if appropriate the prior art.") (citing *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999)).

Contrary to Network-1's assertions, the Court did not use different standards in interpreting "main power source" and "data node." Rather, applying the same standard described above, the '930 Patent specification required the Court to reach different conclusions as to whether the specification limited the claim terms' meaning and scope.

For "main power source," the Court limited the term to "a DC power source" because one of ordinary skill in the art would understand that a DC power source is set forth as a necessary feature of the present invention, not simply a preferred embodiment. Figure 1 shows "a simplified schematic" of "the present invention," and Figure 3 shows "the physical layout of components *corresponding to* the schematic diagram of [Figure] 1." '930 Patent, col. 2:21–22; 3:59–60 (emphasis added). Figure 1 characterizes the present invention as including power source 16; and

Figure 3 defines this as main power supply 70, imposing a mandatory requirement of a DC power supply.  *See* Court's Opinion at 8–10.  Thus, because of their linkage together as a common disclosure by the language of the specification, together Figure 1 and Figure 3 constrain the "main power source" to a DC power supply

The restriction on the term "main power source" is reinforced by Claim 1, which includes a "sensing means for delivering a low level current from said main power source to the access device over said data signaling pair and sensing a resulting voltage level thereon." '930 Patent, col. 4:22–25.  The specification describes how the main power supply is connected and links detector 22 to the sensing means function. '930 Patent, col. 2:52–63.  The electrical circuit path shown and described for voltage level sensing is necessarily supplied from a DC power source.  Both the function of "sensing a resulting voltage level thereon" and the corresponding "sensing means" structure are only described as being operable from a DC power source.  Thus, restriction to a DC power supply is appropriate because the scope of "the present invention" set forth in the '930 Patent specification as a whole is so limited, not merely because main power supply 70 in Figure 3 is shown as the corresponding physical component to power source 16 in Figure 1.

Conversely, for "data node," the Court did not limit the term to an Ethernet environment as described in the specification because one skilled in the art would understand that the Ethernet environment was merely a preferred embodiment and not a necessary feature of the invention.  The specification describes Ethernet as a permissible example of a network environment, but not a mandatory requirement of the invention.  *See, e.g.,* '930 Patent, col. 2:36–37 ("a remote access device 10 which is *compatible* with 10/100 Ethernet requirements") (emphasis added); 3:28–31 ("a

suitable remote power supply is shown generally as 34, which *may* be conveniently incorporated into an Ethernet 8 port switch card") (emphasis added).  Additionally, the specification refers to "data node" or "data network" generally and not specifically to Ethernet. *See, e.g.*, '930 Patent, col. 2:47; 4:11.  Further, the preamble of Claim 1 describes a "data network," and the word "Ethernet" only appears in Claim 4.  *See*, '930 Patent, col. 4:11; 4:44.  Claim 4 depends from Claim 1 and specifically states that "the data node is an Ethernet switch card." '930 Patent, col. 4:43–44.  Thus, Claims 1 and 4 confirm that "data node" is broader than "Ethernet switch card."  Unlike "main power source," one skilled in the art would not read the '930 Patent as limited to an Ethernet environment even though Ethernet is the preferred embodiment expressly described in the patent.

Accordingly, the Court did not apply varying standards for interpreting the two limitations. In this case, applying the same standard for two terms led to two different conclusions.  The remainder of Network-1's arguments merely restate its positions made during the *Markman* briefing, which the Court has already rejected.

## CONCLUSION

Accordingly, Plaintiff Network-1's Motion for Reconsideration of Claim Construction Order is **DENIED**.

**So ORDERED and SIGNED this 18th day of May, 2010.**



**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**