**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| NETWORK-1 SECURITY SOLUTIONS, INC., a Delaware corporation, | CASE NO.  6:08cv030-LED |
| Plaintiff, | Jury Demanded |
| vs. | |
| CISCO SYSTEMS, INC., a California corporation; CISCO-LINKSYS, L.L.C., a California Limited Liability Company; ADTRAN, INC., a Delaware corporation; ENTERASYS NETWORKS, INC., a Delaware corporation; EXTREME NETWORKS, INC., a Delaware corporation; FOUNDRY NETWORKS, INC., a Delaware corporation; NETGEAR, INC., a Delaware corporation; 3COM CORPORATION, a Delaware corporation; | |
| Defendants. | |

**Plaintiff Network-1's
_Revised_ Proposed Findings of Fact and Conclusions of Law**

## Table of Contents

I.      Introduction..................................................................................................................1

II.     Proposed Findings of Fact. .........................................................................................1

    A.     Enterasys' RAND defenses.................................................................................2

    B.     Defendants' laches defenses.................................................................................3

    C.     Correction of Inventorship. .................................................................................6

III.    Proposed Conclusions of Law.. ...................................................................................7

    A.     Equitable Estoppel (Enterasys defense). ..............................................................7

    B.     Waiver (Enterasys defense)..................................................................................8

    C.     Patent Misuse (Enterasys defense). .....................................................................8

    D.     Laches. .................................................................................................................9

    E.     Correction of Inventorship. ...............................................................................11

I.     **Introduction.**

Pursuant to the Court's Order of June 25, 2010 (dkt. #474 at 4), Plaintiff Network-1

Security Solutions, Inc. ("Network-1") submits a Revised Proposed Findings of Fact and

Conclusions of Law as to the issues that are to be tried to the bench.  Those issues are now

limited to:  (1) Enterasys's RAND related defenses, and (2) Defendants' laches defenses.  In

addition, to the extent Defendants present their improper inventorship defense to the jury and are

successful, Plaintiff asks the Court to find that any failure to name all correct inventors was

inadvertent and not the result of deceptive intent and to correct the naming of inventors pursuant

to 35 U.S.C. §256.  Finally, Defendants also seek to have the Court determine the issue of

willfulness, a request which is contrary to law and not agreed to by Network-1.[1]

II.    **Proposed Findings of Fact.**

    A.     **Enterasys's RAND defenses**

1.     No employee of Merlot or Network-1 participated in the development of, or the

vote to approve, the IEEE 802.3af standard or had a duty to disclose the '930 patent.

2.     The IEEE Task Force that developed the 802.3af standard knew of the '930 patent

no later than July of 2001, nearly two years before the standard was approved.

3.     No employee of Merlot or Network-1 participated in the development of, or the

vote to approve, the IEEE 802.3af standard or had a duty to disclose the '930 patent.

4.     The IEEE Task Force that developed the 802.3af standard knew of the '930 patent

no later than July of 2001, nearly two years before the standard was approved.

---

[1] In addition, upon a finding of willfulness as to any Defendants' infringement, Network-1 will move the Court to enhance damages and to declare this case exceptional and award attorneys' fees under §284 and §285.  Network-1 will seek an award of prejudgment interest on any damages award.

5.     The IEEE Task Force that developed the 802.3af standard did not rely on Merlot's submission of a letter of assurance for the '930 patent, or any other conduct of Merlot or Network-1, in developing or approving the standard.

6.     The letter of assurance submitted by Merlot used the IEEE form, which includes three options for the patent owner to select:  (1) an indication that the patent owner is willing to license the patent on a nondiscriminatory basis on reasonable terms and conditions, (2) an indication that the patent owner is unwilling to license the patent, and (3) an indication that the patent owner is willing to grant a royalty free license.  In addition, a patent owner may include with the letter of assurance sample license terms.  Without reading the specific letter of assurance submitted for a particular patent, a potential licensee would not otherwise know which of these options was selected by the patent owner.

7.     Enterasys did not read Merlot's letter of assurance and was not even aware that Merlot had submitted a letter of assurance prior to the filing of this lawsuit.

8.     Enterasys did not rely on the existence of Merlot's letter of assurance, or any conduct or assertions of Merlot or Network-1, in deciding to develop, market, or sell products that are compliant with the 802.3af standard.

9.     In submitting its letter of assurance to the IEEE, Merlot did not intend or evidence an intention to agree to license the '930 patent to all parties on identical terms, on a royalty free basis, or on terms that require below market royalty rates or that are determined independent of the existence of the 802.3af standard.

10.     In requesting and receiving Merlot's letter of assurance, the IEEE did not intend or evidence an intention to obtain Merlot's agreement to license the '930 patent to all parties on

identical terms, on a royalty free basis, or on terms that require below market royalty rates or that are determined independent of the existence of the 802.3af standard.

11.     Network-1 has no obligation to license the '930 patent to all parties on identical terms, on a royalty free basis, or on terms that require below market royalty rates or that are determined independent of the existence of the 802.3af standard.

12.     Prior to the filing of this lawsuit, Enterasys did not approach the IEEE or any court with complaints that Merlot or Network-1 had violated any obligations resulting from Merlot's letter of assurance.

13.     The IEEE reserves the right to enforce the terms of letters of assurance that are submitted by patent owners, but it has never sought to enforce the terms of Merlot's letter of assurance against Merlot or Network-1.

14.     Enterasys never approached Merlot seeking a license for the '930 patent nor was ever refused a license from Merlot.

15.     Enterasys never approached Network-1 prior to this lawsuit seeking a license for the '930 patent and was refused.

16.     Enterasys did not rely on the existence or contents of Merlot's letter of assurance in any way or for any purpose.

17.     Enterasys did not rely on any conduct, statements, or policies of Merlot or Network-1 with respect to the licensing or the '930 patent.

18.     Enterasys was offered a license to the '930 patent on the same license terms that its competitor Netgear, a prior defendant in this lawsuit, accepted in 2009.

    **B.     Defendants' laches defenses**

19.     There is no evidence that 3Com began to infringe the '930 patent prior to

February 7, 2002 – the date that 6 years prior to the filing of this lawsuit on February 7, 2010.

20.     The earliest date that Cisco began to infringe the '930 patent was in December 2002, less than six years before the filing of this lawsuit on February 7, 2008.

21.     The earliest date that Foundry began to infringe the '930 patent was in June 2003, less than six years before the filing of this lawsuit on February 7, 2008.

22.     The earliest date that Extreme began to infringe the '930 patent was in November 2003, less than six years before the filing of this lawsuit on February 7, 2008.

23.     The earliest date that Enterasys began to infringe the '930 patent was in November 2004, less than six years before the filing of this lawsuit on February 7, 2008.

24.     The '930 patent was identified to the members of the IEEE 802.3af Task Force, which included employees of Cisco, 3Com, and Enterasys, by Task Force Chair Steve Carlson during a meeting in July 2001.

25.     In September 2001, the Chairman of the 802.3 working group, Geoff Thompson, sent a letter to Merlot Communications inviting the company to participate in the 802.3af Task Force and to submit a letter of assurance for any patents it had.  Thompson did not specifically mention the '930 patent, but was in fact the one who identified the patent to Carlson in July 2001.  He was seeking a letter of assurance for the '930 patent.

26.     Neither Thompson or anyone else associated with the IEEE or the 802.3af Task Force followed up on Thompson's letter to Merlot and the Task Force went ahead and approved the 802.3af standard without a letter of assurance from Merlot and without modifying the 802.3af standard to avoid infringing the '930 patent.

27.     The 802.3af standard includes an alternative method of providing power over Ethernet via the spare pairs of wires that the parties agree does not infringe the '930 patent.

4

28.     The final draft of the IEEE 802.3af standard was first published on June 18, 2003. No one at Merlot or Network-1 read or had access to the final standard prior to this date.

29.     Merlot submitted a letter of assurance to the IEEE on July 2, 2003, indicating that the use of the '930 patent may be essential to the practice of the 802.3af standard.

30.     Cisco Systems admits that it knew of the '930 patent as early as June 2001.

31.     Cisco-Linksys admits that it knew of the '930 patent as early as January 2004.

32.     On January 15, 2004, Network-1's counsel sent Linksys a letter advising Linksys that products that practice the 802.3af standard, including certain products of Linksys, infringe the '930 patent.  In response, Cisco Systems and Cisco-Linksys began to solicit a non-infringement opinion from counsel that both Cisco and Linksys claim they relied on in continuing to sell their accused products.

33.     3Com Corporation admits that it knew of the '930 patent as early as December 2002.

34.     Foundry Networks, Enterasys Networks, and Extreme Networks admit that they knew of the '930 patent as early as December 2004.  Each of these Defendants received letters from Network-1's licensing representative ThinkFire and counsel in December 2004 advising them that products that practice the 802.3af standard, including their products, infringe the '930 patent.  Further correspondence and discussions ensued with these parties but did not result in a license.

35.     No Defendant ever sought to modify, amend, or withdraw the 802.3af standard – either during its drafting stage or after its publication – in response to concerns about infringing the '930 patent or any allegations of infringement made or suggested by Merlot or Network-1.

36.     The relevant portions of the 802.3af standard that are accused of infringing the '930 patent were reapproved by the IEEE when it ratified the 802.3at standard in September 2009.

37.     No Defendant has modified, redesigned, or changed its accused products or product lines in response to Network-1's allegations that the 802.3af standard, or their standard compliant products, infringe the '930 patent.

38.     No evidence that would be necessary or that would materially improve Defendants' ability to defend against Network-1's infringement claims or to prove their invalidity claims has been destroyed or lost as a result of any delay by Merlot or Network-1 in filing suit against them for infringement of the '930 patent.

39.     On March 31, 2004, PowerDsine sued Network-1 for declaratory relief of invalidity and non-infringement of the '930 patent.  The lawsuit was not settled until November 2005.  During this time, a substantial portion of Network-1's limited resources were devoted to the defense of this lawsuit.

40.     Between August 10, 2005 and August 17, 2007, a substantial portion of Network-1's limited resources were devoted to its enforcement of the '930 patent against D-Link in a lawsuit filed by Network-1 in this Court.

C.      **Correction of Inventorship**

41.     The provisional application to which the '930 patent claims priority did not include any claims.

42.     Neither Patrick Evans nor Edward Caceres was named as an inventor on the utility application that resulted in the issuance of the '930 patent because Merlot's patent

attorney concluded that they were not inventors of any subject matter of the claims that were drafted in connection with the application.

43.     Both Patrick Evans and Edward Caceres were named as inventors on several other utility patent applications filed by Merlot.

44.     Both Patrick Evans and Edward Caceres had invention agreements with Merlot pursuant to which they agreed to assign any rights to inventions they made during their employment at Merlot to the company.

45.     There is no evidence of a deceptive intent on the part of Evans or Caceres, or anyone else, in not seeking to be named or not being named as inventors on the '930 patent application.

## III.     Proposed Conclusions of Law.

### A.     Equitable estoppel

Legal standard

1.     "[T]o find estoppel, Defendants must prove… (1) Plaintiff, who had knowledge of the true facts, communicated something in a misleading way, either by words, conduct, or silence; (2) Defendants relied upon the communication." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 109171, 17-19 (E.D. Tex. 2009).

Conclusions

2.     Enterasys has not proven that Merlot or Network-1 communicated something in a misleading way, either by words, conduct, or silence, either in connection with Merlot's submission of the letter of assurance to the IEEE or otherwise.

3.     Enterasys has not proven that it relied on any communication by Merlot or Network-1 that was misleading.

**B.      Waiver**

<u>Legal standard</u>

4.      "[T]o find waiver, Defendants must prove that: (1) a right existed at the time of the waiver; (2) Plaintiff had constructive or actual knowledge of the right in question; and (3) Plaintiff intended to relinquish its right." *Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 2009 U.S. Dist. LEXIS 109171, 16-17 (E.D. Tex. Sept. 4, 2009) *citing Broadcast Satellite Int'l, Inc. v. Nat'l Digital Television Ctr.*, 323 F.3d 339, 346 (5th Cir. 2003).

5.      In the context of patent infringement lawsuits, the right at issue is the right to sue for patent infringement and that is the right that must be found waived. *See, e.g.*, *Advanced Tech. Incubator,* 2009 U.S. Dist. LEXIS 109171, 17 (E.D. Tex. 2009) ("Defendants have provided no evidence raising a fact issue that Plaintiff 'intended to relinquish its right.' As stated above, Plaintiff represented that it intended to sue for infringement, if necessary").

<u>Conclusion</u>

6.      Neither Merlot nor Network-1 has intentionally relinquished or waived its right to sue Enterasys for patent infringement or to seek full recovery for Enterasys' infringement whether by Merlot's submission of the letter of assurance or otherwise.

**C.      Patent misuse**

<u>Legal standard</u>

7.      "In order for competitive behavior to amount to patent misuse, one must [1] impermissibly broaden[] the scope of the patent grant with [2] anticompetitive effect." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1339 (Fed. Cir. 2006) (enumeration added; internal citations omitted).

<u>Conclusion</u>

8.      Neither Merlot nor Network-1 has engaged in any conduct or activity that has impermissibly broadened the scope of the '930 patent or resulted in anticompetitive effect, whether in connection with Merlot's submission of the letter of assurance, Network-1's licensing activities, or otherwise.

**B.      Laches**

<u>Legal standard</u>

9.      "The application of the defense of laches is committed to the sound discretion of the district court." *Hearing Components, Inc. v. Shure Inc*., 600 F.3d 1357, 1375 (Fed. Cir. 2010), *quoting A.C. Aukerman Co. v. R.L. Chaides Constr. Co*., 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).

10.      "To prevail on a defense of laches, [each Defendant] must prove two elements: (1) [Network-1] delayed filing suit for an unreasonable and inexcusable length of time from the time it knew or reasonably should have known of its claim against [the Defendant], and (2) the delay operated to the prejudice or injury of [the Defendant]." *Hearing Components, Inc. v. Shure Inc*., 600 F.3d 1357, 1375 (Fed. Cir. 2010)

11.      Plaintiff's alleged "delay is measured from the time it knew or reasonably should have known of [the Defendants']  alleged infringing activities to the date of suit." *Id.*

12.      "A delay of more than six years raises a presumption of prejudice." *Id.*

13.      A Defendants' prior knowledge of the patent, reliance on a noninfringement opinion, and assertions that the claimed invention does not create the value of its accused products demonstrates a lack of prejudice from the Plaintiff's delay in filing.  *Id.* at 1376 ("[Defendant] knew about the patents in suit long before suit was filed, and the court permissibly found that [Defendant] had relied on noninfringement opinions of counsel, such that it would not

have acted differently if it had been sued earlier. Indeed, the court discussed [Defendants']

position that its products' value did not arise from the use of the claimed invention").

14.    *Vita-Mix Corp. v. Basic Holding, Inc*., 581 F.3d 1317 (Fed. Cir. 2009)

("Defendant notes that it did in fact promptly change its instructions when it learned of the

potential infringement.  However, while a change to [Defendants'] product instructions may

impact its liability for indirect infringement, no change to those instructions would affect [its]

liability for direct infringement. In light of our rulings on inducement and contributory

infringement, there can be no prejudice arising from [Defendants']  lost opportunity to change

those product instructions. We therefore affirm the district court's grant  of summary judgment of

no laches").

<u>Conclusions</u>

15.    Merlot and Network-1 did not have actual or constructive notice of any

Defendants' infringement more than six years prior to the filing of this lawsuit and therefore no

presumption of laches arises.

16.    Merlot and Network-1 did not delay for an unreasonable and inexcusable length

of time from the time they knew or reasonably should have known of any Defendants'

infringement to the time this lawsuit was filed.

17.    No Defendant suffered any cognizable prejudice or injury as a result of any delay

by Merlot or Network-1 in filing this lawsuit.

18.    The circumstances of this case, and other considerations of equity, do not warrant

a finding of laches.

## C.        Correction of Inventorship

<u>Legal standard</u>

19.      "Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error."  35 U.S.C. § 256.

20.      "The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly." *Id.*

21.       "As noted, section 256 permits the Commissioner and federal courts to correct erroneous listing of inventors in an issued patent.  In the event of nonjoinder of an inventor, this error must occur 'without any deceptive intention on his part.'  The clause 'on his part' refers to the antecedent 'inventor,' meaning that the omitted inventor must not have engaged in any deception related to the nonjoinder." *Stark v. Advanced Magnetics*, 119 F.3d 1551, 1554 (Fed. Cir. 1997).

22.      "This section is a savings provision. If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed. Cir. 1998).

<u>Conclusions</u>

23.     The evidence shows that the reason Patrick Evans and Edward Caceres were not named as inventors on the utility application that issued as the '930 patent is because Merlot's patent attorney concluded that neither was an inventor of any of the claimed subject matter.

24.     There is no evidence of any deceptive intent on the part of Evans, Caceres, or anyone else in not naming Evans or Caceres an inventor.

25.     To the extent the jury properly found that Evans and/or Caceres is in fact an unnamed inventors of the claimed subject matter of the '930 patent, the listing of inventors on the '930 patent should be and hereby is corrected to name all inventors under 35 U.S.C. §256.


Dated:  July 7, 2010                        Respectfully submitted,

                                            By: <u>/s/ *Jeff Eichmann*</u>
                                                    Sean A. Luner
                                                    State Bar No. 165443
                                                    Gregory S. Dovel
                                                    State Bar No. 135387
                                                    John Jeffrey Eichmann
                                                    State Bar No. 227472
                                                    Dovel & Luner, LLP
                                                    201 Santa Monica Blvd., Suite 600
                                                    Santa Monica, CA 90401
                                                    Telephone: 310-656-7066
                                                    Facsimile: 310-657-7069
                                                    Email: sean@dovellaw.com
                                                    Email: greg@dovellaw.com
                                                    Email:  jeff@dovellaw.com

                                                    T. John Ward, Jr.
                                                    State Bar No. 00794818
                                                    Ward & Smith Law Firm
                                                    111 W. Tyler St.
                                                    Longview, Texas 75601
                                                    Telephone: (903) 757-6400
                                                    Facsimile: (903) 757-2323
                                                    Email: jw@jwfirm.com

ATTORNEYS FOR PLAINTIFF,
NETWORK-1 SECURITY SOLUTIONS,
INC.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing document was served, via E-mail, on counsel for Defendants this 7th day of July, 2010.

_/s/ Jeff Eichmann_